STATE OF HAWAII, Plaintiff–Appellee, v. FRITZ KLAT-
TENHOFF, Defendant–Appellant

NO. 14008

(CR. NO. 88–0074)

NOVEMBER 21, 1990

PADGETT, ACTING C.J., HAYASHI,
WAKATSUKI, AND MOON, JJ., AND
INTERMEDIATE COURT OF APPEALS CHIEF
JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED

OPINION OF THE COURT BY PADGETT, ACTING C.J.

This case is an appeal by defendant--appellant Fritz Klatten-hoff (appellant) from a conviction for two counts of theft in the first degree (Hawaii Revised Statutes (HRS) § 708–831(1)(b)).

Appellant's case rests on four contentions. First, appellant asserts that the Code of Professional Responsibility prohibited the Attorney General (AG) from prosecuting him in this criminal action because the AG was concurrently representing appellant in two separate and unrelated civil suits. Second, appellant asserts his right to privacy, under the United States Constitution and the Hawaii Constitution, was violated when the AG utilized administrative subpoenas to obtain appellant's personal bank account records. Third, appellant contends the administrative subpoenas were improperly issued under HRS § 28–2.5(1)(A) and –2.5(2)(A). Fourth, appellant claims there was insufficient evidence to convict him of theft in the first degree.

We affirm. Appellant's first three contentions raise issues of first impression in this State, and we therefore address these issues in some detail.

Just prior to March 1988, the Kauai Prosecuting Attorney referred a criminal investigation, involving appellant, to the AG, because the prosecuting attorney anticipated he would be a

material witness in the case. Accordingly, the AG began investigating the case. As a result of the investigation, appellant was indicted by the Kauai grand jury on two counts of theft in the first degree on June 30, 1988. Count I alleged that from January 25, 1982 through May 27, 1986, appellant, as treasurer of the Kauai Police Relief Association (KPRA), obtained or exerted unauthorized control over $20,000 belonging to KPRA. Count II alleged that from January 29, 1985 through March 24, 1986, appellant had done the same with respect to $1,200 owned by the Kauai Police Pistol Club (KPPC).

The criminal justice division of the AG's office did not know that the separately located litigation and administrative division of the AG's office had been representing appellant in two unrelated civil actions.[1] The civil representations began July 22, 1987 and continued through November 23, 1988. Thus, the AG's office was concurrently serving as defense counsel for appellant in the civil suits and prosecuting him in the criminal action.

Based upon these concurrent representations and prosecution, on November 10, 1988, appellant filed a motion to disqualify the AG from prosecuting him, claiming that the AG was in violation of the Code of Professional Responsibility. Initially, the trial court

---

[1] On July 22, 1987, in the United States District Court for the District of Hawaii (D. Haw.), *Mellinger v. Klattenhoff* (No. 87–0565), was filed against appellant, individually and in his official capacity as sheriff for the State of Hawaii, City and County of Honolulu. The case arose from the alleged mistreatment of a prisoner by deputies in the State sheriff's office. The AG represented appellant until November 23, 1988, when appellant was dismissed from the suit based on qualified immunity.

On January 23, 1988, *Hall v. Okabayashi*, No. 88–00051 (D. Haw.), was filed against appellant, individually and in his official capacity as sheriff for the State of Hawaii, City and County of Honolulu. The case involved an unlawful eviction claim. On May 9, 1988, the AG representing appellant obtained a dismissal of this action based on lack of subject matter jurisdiction. The AG continued to represent appellant when the dismissal was appealed by the plaintiff on May 25, 1988.

granted appellant's motion for disqualification holding that, although appellant had not suffered any prejudice from the simultaneous representation and prosecution, the AG would be in violation of Canons 9 and 5 of the Code of Professional Responsibility if it continued the concurrent representation. However, on January 19, 1989, the trial court reversed its order disqualifying the AG because appellant was stipulated out of the *Mellinger* case on November 23, 1988, a fact which the trial court had not been informed of when it originally granted the motion. The trial court noted appellant had never alleged that information from the two civil suits was used in this prosecution.

Prior to appellant's grand jury indictment on June 30, 1988, the AG issued ten subpoenas duces tecum for financial records. Five of these subpoenas were to obtain appellant's personal bank records. [2] Appellant moved to suppress all the evidence regarding his personal bank records on the basis that said evidence was obtained in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article I, sections 6 and 7 of the Hawaii Constitution. The accountant retained by the State to analyze these records testified that she considered both inculpating withdrawals and exculpating deposits in analyzing the records. Thus, exculpating evidence was still being explored after June 1, 1988 when the last subpoena was issued.

The trial court denied appellant's motion to suppress this evidence on the grounds that appellant had no reasonable expectation of privacy in the bank records under *United States v. Miller*, 425 U.S. 435, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976). Consequently, the records were admitted into evidence at trial.

Appellant's trial was conducted by the court without a jury. The parties' stipulations and the documentary evidence presented

---

[2] The subpoenas in question were issued from March 21, 1988 through June 1, 1988.

at trial indicate that, as treasurer for both KPRA and KPPC, appellant was in sole control and possession of the financial records of these two organizations. The checks for each organization required two signatures to be negotiated, one being appellant's. On a number of occasions, appellant approached the other co–signers and asked them to sign blank checks of either KPRA or KPPC. The co–signers were told, by appellant, that signing the blank checks was a matter of convenience. From January 25, 1982 through May 27, 1986, appellant wrote 66 checks to himself drawn on the KPRA account. From January 29, 1985 through March 24, 1986, appellant wrote 6 checks to himself drawn on the KPPC account. An analysis of appellant's bank records shows that the checks were marked for deposit into appellant's personal bank accounts. The checks totalled $20,880 from KPRA and $1,250 from KPPC.

On the basis of the foregoing evidence, the trial court found appellant guilty on both counts of theft in the first degree. Judgment was filed on July 14, 1989. This appeal followed.

Appellant contends the AG's functions as chief legal officer in civil cases, and chief law officer in criminal cases, do not exempt the AG from application of the Code of Professional Responsibility, and that Canon 5 prohibited the AG from concurrently representing appellant in the civil suits and prosecuting appellant in the criminal suit. We disagree.

The AG is mandated, by law, to administer and render legal services to the governor, legislature and to the State departments and offices as the governor may direct. HRS § 26–7 (Supp. 1989). In addition, the AG is mandated to represent the State in all criminal and civil matters where the State is a party, or may be an interested party. HRS § 28–1 (Supp. 1989). Thus, the AG was clearly mandated by law to both defend appellant in his civil suits and prosecute him in the criminal action. HRS §§ 26–7, 28–1.

The Code of Professional Responsibility provides:

> A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment . . . .
>
> [Except] . . . a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Canon 5, Disciplinary Rule (DR) 5–105(A) and (C). The concern underlying DR 5–105 is that concurrent representation is conducive to divided loyalties. *State v. Reis*, 4 Haw. App. 327, 331, 666 P.2d 612, 616 (1983). In *Reis*, the Intermediate Court of Appeals (ICA) stated:

> Concurrent representation of the defendant and an adverse [party] . . . places the attorney in a situation where he is forced to balance the zeal of his defense of the accused against any solicitude for . . . [the adverse] party. This situation is deemed inherently conducive to divided loyalties and, therefore, as a matter of law, a real conflict of interest is said to exist.

However, due to the AG's statutorily mandated role in our legal system, we cannot mechanically apply the Code of Professional Responsibility to the AG's office.

Recognizing the unique status of the AG is not a novel concept in this State. In *White v. Board of Education*, 54 Haw. 10, 501 P.2d 358 (1972), we held that an AG who participated as an adversary at a dismissal hearing against the school board could not then advise the board in its decision–making proceedings involving the same case. *Id.* at 16, 501 P.2d at 363. However, we noted that in cases of this nature, the school board could obtain assistance from

another deputy AG who played no part in the adversary hearing. *Id.* at 16 n.7, 501 P.2d at 363 n.7.

A majority of states have similarly permitted the AG to concurrently represent conflicting interests when the AG can ensure independent representation for the competing parties. *Superintendent of Ins. v. Attorney Gen.*, 558 A.2d 1197, 1202–03 (Me. 1989) (citing *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Information Comm'n*, 174 Conn. 308, 319, 387 A.2d 533, 537 (1978); *Feeney v. Commonwealth*, 373 Mass. 359, 365–66, 366 N.E.2d 1262, 1266 (1977); *see also E.P.A. v. Pollution Control Bd.*, 69 Ill. 2d 394, 14 Ill. Dec. 245, 372 N.E.2d 50 (1977); *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865 (Ky. 1974); *Humphrey ex rel. State v. McLaren*, 402 N.W.2d 535 (Minn. 1987); *State ex rel. Allain v. Mississippi Pub. Serv. Comm'n*, 418 So. 2d 779 (Miss. 1982)); *see also State ex rel. McLeod v. Snipes*, 266 S.C. 415, 421–22, 223 S.E.2d 853, 855–56 (1976).

We recognize, as do the majority of states, that due to the multiple duties statutorily imposed upon the AG's office, the ethical rules for private law firms are not necessarily applicable, in all cases, to the AG's office.

The practical reality is that every employee, appointee or elected official in state government who may be advised by the AG, or receive some legal service from the AG is a potential client of the AG. Thus, there is a potential conflict whenever the AG exercises his statutory duty to investigate and prosecute violations of state law committed by people in state service. Carried to its logical end, appellant's argument would mean that every time a state employee, appointee or elected official became the subject of a criminal investigation, that party could disqualify the AG from prosecuting based upon an alleged conflict–of–interest. Thus, the AG would constantly be prevented from performing his legal duties as the State's chief law enforcement officer.

We hold that the AG may represent a state employee in civil matters while investigating and prosecuting him in criminal matters, so long as the staff of the AG can be assigned in such a manner as to afford independent legal counsel and representation in the civil matter, and so long as such representation does not result in prejudice in the criminal matter to the person represented.

Therefore, we must now determine as a matter of fact, using the "clearly erroneous" standard of review, whether appellant received sufficiently independent legal representation from the AG's office. *Waugh v. University of Hawaii*, 63 Haw. 117, 133, 621 P.2d 957, 969 (1980).

The facts indicate that the deputy AG representing appellant in the civil suits was from a different, separately located division. There is nothing in the record which indicates the AG obtained information from appellant, or otherwise in his representation of appellant during the civil cases, for use in prosecution of the criminal case. Furthermore, the civil cases were completely unrelated to the criminal prosecution and appellant received favorable results in both civil cases. Based on the foregoing, it is clear that appellant received sufficiently independent legal counsel from the AG. It is also clear that the civil representation resulted in no prejudice to appellant in this criminal prosecution.

We now consider appellant's contentions with respect to the subpoenas issued for his bank records. Appellant has asserted that the evidence pertaining to his personal bank records should not have been admitted by the trial court because he had a reasonable expectation of privacy in these records which was violated when the AG obtained these records by subpoena. Appellant also contends that even if there was no reasonable expectation of privacy in these records, the AG exceeded the scope of its subpoena power in obtaining the records. We disagree with both of appellant's contentions.

A majority of states have adopted the holding in *United States v. Miller*, 425 U.S. at 440–43, 96 S. Ct. at 1623–24, 48 L. Ed. 2d at 77–78, which states that there is no reasonable expectation of privacy in bank records. The rationale in *Miller* is that bank records are not confidential communications but instruments to be used in commercial transactions. *Id.* at 442–43, 96 S. Ct. at 1624, 48 L. Ed. 2d at 78. The records are owned by the banks because they are business records, they are not the private papers of the account holder. *Id.* These records contain information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business. *Id.* Furthermore, "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* at 443, 96 S. Ct. at 1624, 48 L. Ed. 2d at 79 (citing *United States v. White*, 401 U.S. 745, 751–52, 91 S. Ct. 1122, 1125–26, 28 L. Ed. 2d 453, 458–59 (1971).

Although a minority of states have held, as a matter of state constitutional law, that there is a reasonable expectation of privacy in bank records, we do not find that the Hawaii Constitution provides such a right. Therefore, we adopt the rule set forth in *United States v. Miller*, and follow the majority of states in finding no reasonable expectation of privacy in personal bank records. Thus, the subpoenas did not violate appellant's constitutional rights.

HRS § 28–2.5(1)(A) permits the AG to issue subpoenas in support of general investigations. HRS § 28–2.5(2)(A) provides that the AG may not issue subpoenas when (1) the matter under investigation is the subject of adjudication, or (2) the AG determines it is more probable than not that adjudication will occur.

In this case, the subpoenas in question were issued prior to the grand jury indictment of appellant on June 30, 1988. Thus, no adjudicatory proceedings had yet begun. As of June 13, 1988, the AG was still seeking records relating to Count II of the indictment, almost two weeks after the issuance of the latest subpoena

appellant is challenging. Through June 13, 1988, the accountant retained by the State to review the financial records was considering not only inculpating evidence but exculpating evidence as well. On the basis of these facts, we hold that the investigation was general as opposed to specific during the period when the bank records in question were obtained by subpoena. Therefore, the subpoenas were properly issued under HRS § 28–2.5(1)(A).

Finally, appellant contends that there was insufficient evidence to convict him under HRS § 708–831(1)(b). We disagree.

In reviewing a criminal conviction, following a non–jury trial, we will view the evidence in the light most favorable to the State to determine if there was substantial evidence of the appellant's guilt. *State v. Smith*, 59 Haw. 456, 464, 583 P.2d 337, 341 (1978).

HRS § 708–831(1)(b) provides that a person commits theft in the first degree if he commits theft of property of another exceeding $200. HRS § 708–835 permits proof of theft by any manner under HRS § 708–830, including appropriation and deception.

The evidence presented at trial, including the personal bank records of appellant, the accounting records of KPRA and KPPC together with the parties' stipulations are more than sufficient to establish appellant's guilt. It is clear from the evidence that appellant wrote checks to himself from the KPRA and KPPC accounts. The checks were endorsed by appellant for either cash or deposit to one of his personal accounts. The checks surpassed the $200 threshold required by HRS § 708–831(1)(b). The evidence also shows that the co–signers of the checks were asked by appellant to sign the checks when they were blank. There is no evidence to show that appellant made any repayments to either KPRA or KPPC. There were gaps in the KPRA and KPPC check registers which corresponded to a number of the checks appellant had written to himself. Therefore, viewing the evidence in the light most favorable to the State, there was substantial evidence to convict appellant of theft in the first degree.

Accordingly, the trial court's decision is affirmed.

*Renee M.L. Yuen* (*Richard K. Perkins* with her on the brief; Yuen & Perkins) for appellant.

*Edwin L. Baker* (*Lawrence A. Goya* on the brief), Deputy Attorneys General, for appellee.