884 P.2d 1150

STATE of Hawai'i, Plaintiff–Appellee,

v.

Aaron Joseph PITT, Defendant–Appellant.

No. 16412.

Intermediate Court of Appeals of Hawai'i.

Nov. 30, 1994.

As Amended Dec. 6, 1994.

Dennis W. Jung, on the brief, Honolulu, for defendant-appellant.

Charlotte J. Duarte, Deputy Pros. Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

Defendant–Appellant Aaron Joseph Pitt (Defendant) appeals from the July 17, 1992 Judgment of the District Court of the First Circuit, convicting him of various traffic offenses, and the district court's August 14, 1992 oral order, denying his motion for a new trial. Defendant's sole contention is that he was denied his constitutional right to effective assistance of counsel at trial because his trial counsel concurrently represented Alonzo Pitt (Alonzo), Defendant's brother, in another criminal case, and Defendant's defense at trial was that Alonzo was the actual perpetrator of the offenses for which Defendant was ultimately convicted.

Because the record on appeal contains insufficient information for us to determine whether there is any merit to Defendant's argument, we remand for proceedings consistent with this opinion.

## FACTS

At about 11:35 p.m. on January 30, 1992, police officer Tracy Dansuka (Officer Dansuka) was on routine patrol in the Kailua area when she observed a car on Oneawa Street which appeared to be traveling in excess of the posted twenty-five-miles-per-hour speed limit. Using a K–15 radar gun, she got a reading that the car was traveling at forty-three miles per hour. Officer Dansuka locked in the reading, started her automobile, and turned on her blue revolving light and headlights.

As the speeding car passed directly in front of her, Officer Dansuka was able to see into the car through the partially opened passenger-side window, and in the illumination of her headlights, she recognized Defendant as the driver of the car. After chasing the car for several blocks, including two jaunts down one-way streets in the wrong direction, Officer Dansuka found the empty car parked in a driveway on Kaulani Way, the driver having fled.

Based upon her visual identification of Defendant as the driver, the documentation found in the car, and information relayed from the police dispatcher, Officer Dansuka cited Defendant for: (1) non-compliance with speed limit, a violation of Hawai'i Revised Statutes (HRS) § 291C–102 (1985); (2) two counts of driving in the wrong direction on a one-way street, a violation of HRS § 291C–48 (1985); (3) driving with a suspended license, a violation of HRS § 286–132 (1985); and (4) driving without no-fault insurance, a violation of HRS § 431:10C–104 (1987 Sp. Pamphlet, Supp.1992). Officer Dansuka then placed the citations inside the vehicle, and had the vehicle towed away because it was blocking another car.

## PROCEDURAL HISTORY

Defendant's cases were originally scheduled for trial on June 19, 1992. At that time, Deputy Public Defender Adrienne Sanders (Sanders), Defendant's court-appointed counsel, gave oral notice that Defendant intended to rely on an alibi defense. Sanders then requested and received a one-month continuance of the trial date, due to the absence of one of the alibi witnesses.[1]

Defendant's jury-waived trial commenced on July 17, 1992, and Officer Dansuka was the State's only witness. After explaining

1. In moving for the continuance, Sanders represented to the trial court that Defendant "has one witness who is not here today of the three that we would be calling...." Transcript (Tr.) 6/19/92 at 2. The trial court asked Sanders the name of the witness, and Sanders replied that "[t]here are two witnesses for the Defense for the alibi witness: Desiree Leong and Pauline Molia." *Id.* at 3. The trial court "reluctantly grant[ed]" Defendant's motion for continuance, because "one of the defendant's witnesses was not pres-

ent." *Id.* Although the identity of the third witness is unclear from this part of the record, the trial court was apparently aware that the witness was Alonzo Pitt (Alonzo), Defendant's brother. In denying Defendant's motion for a new trial based on an offer of proof that Alonzo would admit to the conduct charged, the trial court noted that "[w]e continued it for trial on a request to get that brother here." Tr. 8/14/92 at 12.

her version of what transpired on the night in question, Officer Dansuka testified that she was familiar with Defendant and his two brothers from prior contacts she had had with them and was "a hundred percent sure" that it was Defendant who had been driving the vehicle on the night in question. The defense then presented three alibi witnesses—Defendant, Defendant's mother, and Defendant's girl friend—all of whom testified that Defendant was home in bed at the time of the chase. Defendant also testified that at about 11:50 p.m. on the night in question, he had been awakened by Alonzo, who informed him that his car had been towed away.

The alibi defense was rejected by the trial court, which found Defendant guilty of all charges. Immediately after the trial but prior to sentencing, Sanders orally moved for a new trial based on newly discovered evidence, stating that she believed Alonzo was the driver of the vehicle and therefore wanted an opportunity to bring him to court to testify. The trial court denied the motion, pointing out that Defendant had already been given opportunities to bring in Alonzo as a witness, and sentenced Defendant as follows: (1) for noncompliance with speed limit—a $50 fine and an assessment of three points against his driving record; (2) for the two counts of traveling the wrong way on a one-way street—a $40 and $50 fine, respectively; (3) for driving with a suspended license—a $250 fine and fifteen days' incarceration; (4) for driving without no-fault insurance—a $3,000 fine, a one-year license suspension, and ten days' incarceration, to be served consecutively; and (5) for each offense, a $5 assessment to the State Driver Education program. Execution of Defendant's sentence was stayed for thirty days, however, pending perfection of an appeal by Defendant.

On July 22, 1992, during the continuance period, Sanders filed a written motion for a new trial, asserting as grounds therefor, the falsity of Officer Dansuka's trial testimony.[2] That same day, an order was filed terminating the appointment of the Public Defender's office in this case, for the reason that

> [t]he Public Defender is unable to represent the Defendant because of a conflict of interest, TO WIT:
>
> WHILE RESEARCHING THE NEW EVIDENCE FOR A MOTION FOR NEW TRIAL, DEFENSE ATTORNEY, [SANDERS] DISCOVERED THAT [ALONZO], THE PERSON THAT [DEFENDANT] IS ACCUSING OF BEING THE PERPETRATOR OF THE ABOVE-ENTITLED CRIMES IS A CLIENT OF THE OFFICE OF THE PUBLIC DEFENDER.

Record on Appeal (R.A.) at 13. Defendant's current counsel, Dennis Jung (Jung) was appointed by the same order and argued the motion for a new trial.

At the hearing on the motion, Jung made an offer of proof that he had three witnesses present in the courtroom—Defendant, Alonzo, and Alonzo's girl friend—who would testify that: (1) Alonzo was the driver of the car on the evening in question; (2) Alonzo was also represented by Sanders; (3) neither Defendant nor Alonzo had ever been asked to waive any conflict of interest generated by Sanders' representation of the two brothers; and (4) Alonzo had not been subpoenaed to appear at Defendant's trial. The trial court refused to allow Defendant to have these witnesses testify.

Jung then orally raised, for the first time, an additional substantive ground for a new trial, the claim of ineffective assistance of Defendant's trial counsel. Jung argued that a conflict of interest existed on the part of Defendant's trial counsel because she also represented Alonzo. Therefore, according to Jung, "the Public Defender's Office decided who was to take the rap for this charge by

---

**2.** In the memorandum in support of this motion, Sanders asserted that Officer Dansuka's testimony was false because Defendant had only received one other ticket in the Kailua District, which may not have been given by Officer Dansuka, and that all of Defendant's other citations were given outside of the Kailua District. This was offered to prove the falsity of Officer Dansu-ka's testimony that she had assisted other police officers giving Defendant traffic tickets, since Officer Dansuka had been assigned to Kailua for five years. However, Officer Dansuka never testified that she had cited Defendant herself, just that she had seen Defendant "numerous times in the Kailua [police] station[,]" and "around the Kailua area." Tr. 7/17/92 at 19–20, 29.

protecting one brother and convicting the other." Tr. 8/14/92 at 9. Jung also pointed out, and the court confirmed, that no subpoena had even been issued for Alonzo to appear at trial. The following colloquy then took place:

[JUNG]: Your Honor, in view of the record, that there was no subpoena to [Alonzo] by the Public Defender's Office, after they represented to the Court that they wanted a continuance to bring him in, we argue that that is evidence in the record to substantiate the conflict of interest.

I'm not arguing that the attorney of record is not a good attorney. I have every reason to believe that she's one of the best attorneys in the Public Defender's Office, but we're talking about one instance, Your Honor, where the Court has imposed a sentence that this gentleman has to go to jail and this gentleman has argued that he didn't do it and that the person who is guilty is the guy who's sitting in the back row.

All we're doing, Your Honor, is asking for an opportunity to have a trial where all the facts can be laid out.

THE COURT: Oh, you had a trial. And the date ... two times. One to get that brother here. We continued it for trial on a request to get that brother here. They all live on the same property. They were all here. Mother's here; girlfriend is here; he's here; brother, after one continuance to get him here is not here. I think the family should have a meeting.

[JUNG]: Your Honor, I think the Court would understand that [Alonzo] doesn't want to come to court because if he takes the stand and he testifies that he was the one who was driving the car, and he can't justify why he ran away from the police officer, that's subjection to penal liability.

Now, the thing is, it behooves the Public Defender's Office to force him to come to court. The problem is the Public Defender's Office doesn't want to force [Alonzo] to come to court and take penal responsibility because the Public Defender's Office represents [Alonzo] and they have a duty to keep him out of jail. So in a sense, even without knowing, just inadvertently, Your Honor, the Public Defender's Office sacrificed this gentleman to save that fellow in the back.

Your Honor, our argument is the Public Defender's Office no longer represents this gentleman sitting before the Court and we ask for an opportunity for a trial where there is no conflict of interest; where this person can bring in all the witnesses and even force his brother to come and testify and take responsibility.

\*     \*     \*     \*     \*     \*

THE COURT: They've had every opportunity, within that family, on the trial date, .. [sic] one week, the trial before that they asked for a continuance to bring in this brother. On the day of trial the brother wasn't here and everybody else in the family was here. Now, if the family desires to play it that way, I don't think Counsel is responsible for an internal family scene which came to light during the trial and I listened to all and it got down to the great test in any trial—credibility of the evidence!

Tr. 8/14/92 at 11–13.

After further argument, the trial court, without affording Defendant an evidentiary hearing regarding his claim of ineffective assistance of counsel, denied Defendant's motion for a new trial. This appeal followed.

## DISCUSSION

### A.

◼ We address, first, the State's procedural argument that Defendant may not assert on appeal substantive grounds for a new trial which were not raised in his timely filed written motion for a new trial.[3]

---

3. Hawai'i Rules of Penal Procedure Rule 33 requires that a motion for new trial "be made within 10 days after verdict or finding of guilty or within such time as the court may fix during the 10–day period." In this case, the trial court rendered its guilty verdict on July 17, 1992. Defendant's written motion for new trial, while filed timely, alleged only the falsity of Officer Dansuka's testimony, as grounds for a new trial. It was only at the hearing on the motion on August 14, 1992 that the ineffective assistance of counsel claim was raised. Accordingly, the State argues

In *State v. Silva,* 75 Haw. 419, 434–39, 864 P.2d 583, 591–93 (1993), the Hawai'i Supreme Court specifically held that claims of ineffective assistance of counsel could be raised, for the first time, on appeal. In *State v. Reed,* 77 Hawai'i 72, 881 P.2d 1218 (1994), the supreme court reaffirmed *Silva,* concluding that although the trial court lacked jurisdiction to hear defendant's untimely motion for a new trial on grounds of ineffective assistance of counsel, the issue could nevertheless be raised for the first time on appeal. *Id.* at 83, 881 P.2d at 1229.

Based on *Silva* and *Reed,* there is no merit to the State's argument.

### B.

The federal and state constitutional right to counsel,[4] described by the Hawai'i Supreme Court as "one of the most fundamental rights guaranteed to an individual charged with crime," *State v. Kane,* 52 Haw. 484, 486, 479 P.2d 207, 208 (1971), requires that "effective aid" be afforded to a defendant in the preparation and trial of his case. *Id.* This right encompasses the "correlative right to representation that is free from conflicts of interest," *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981), for as we stated in *State v. Reis,* 4 Haw.App. 327, 666 P.2d 612 (1983):

> The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choosing or court-appointed. Such representation is lacking, however, if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.

*Id.* at 330, 666 P.2d at 615 (quoting *Porter v. United States,* 298 F.2d 461, 463 (5th Cir. 1962)).

■ When questions are raised as to whether a defendant has been provided with effective representation of counsel, procedural due process requires that the trial judge conduct an evidentiary hearing which establishes, on the record, the defendant's objections to assigned counsel. *Kane,* 52 Haw. at 487–88, 479 P.2d at 209. Such a hearing is essential if a proper determination is to be made regarding the effectiveness of defense counsel's assistance.

In this case, the trial judge did not provide Defendant with an evidentiary hearing to establish his claims of ineffective assistance of counsel. We are therefore unable to determine whether there is any merit to Defendant's claims and, accordingly, find it necessary to remand this case for an evidentiary hearing on Defendant's claims.

### C.

■ In *Reis, supra,* this court discussed at length the impact of defense counsel's conflict of interests on the constitutional right to effective assistance of counsel. We pointed out that two situations generally give rise to claims of ineffective assistance of counsel: (1) joint representation of co-defendants, a situation not present in the instant case; and (2) dual representation, where an attorney represents or formerly represented a hostile party or a witness. Because dual representation does not present the same degree of risk as joint representation, we concluded that "the defendant must show either a real conflict of interest or a specific instance of prejudice" before the right of effective assistance of counsel will be deemed denied. *Id.* at 330, 666 P.2d at 616.

Elaborating on the conflicts posed by dual representation, we stated:

that this court has no jurisdiction to hear the claim.

**4.** The Sixth Amendment of the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." A similar right is guaranteed to criminal defendants by virtue of article I, section 14 of the Hawai'i Constitution, which provides partly that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for the accused's defense."

The issue of dual representation is further broken down into concurrent and prior representation. Concurrent representation involves ongoing representation by the defendant's attorney of a prosecution witness or hostile party, while prior representation involves only a previous representation of the witness or hostile party.

Concurrent representation of the defendant and an adverse witness or a hostile party places the attorney in a situation where he is forced to balance the zeal of his defense of the accused against any solicitude for his client, the witness or hostile party. This situation is deemed inherently conducive to divided loyalties and, therefore, as a matter of law, a real conflict of interest is said to exist. If the defendant has not acquiesced in a representation involving a real or actual conflict, a mistrial or a new trial will be ordered depending on whether a verdict has been rendered.

Where the conflict of interest is based upon defense counsel's prior representation of a witness or hostile party, the courts have examined two factors relating to effective cross-examination in determining whether the attorney's undivided loyalties reside with his current client. The first involves the attorney's pecuniary interest in possible future business from the witness which causes the attorney to avoid vigorous cross-examination that may be embarrassing or offensive to the witness. The second involves the failure to use privileged information obtained from the witness for impeachment purposes or for thorough cross-examination because of the attorney's fear of misusing confidential information. Both factors should be closely examined by the courts in order to determine where the attorney's loyalty lies.

*Id.* at 330–32, 666 P.2d at 616 (citations omitted).

In the instant case, no evidentiary hearing was held regarding the nature of Sanders' alleged conflict of interest. We are therefore unable to discern whether the conflict involves prior or concurrent representation. It is also unclear whether Sanders herself represented both brothers or whether another deputy public defender represented Alonzo.[5]

Clearly under *Reis,* if Sanders concurrently represented both brothers, such representation would be deemed inherently conducive to divided loyalties, thus requiring a new trial. On the other hand, if Sanders had represented Alonzo in a prior trial, no new trial would be mandated unless, upon examination, it was determined that Sanders did not demonstrate undivided loyalty to Defendant in the instant case.

### D.

█ A different situation would be presented if a deputy public defender other than Sanders concurrently represented Alonzo. Traditionally, if a private attorney is disqualified from representing a criminal defendant because of a conflict of interest, such conflict serves to disqualify the entire firm with which the attorney is associated. See Hawai'i Code of Professional Responsibility (HCPR), Disciplinary Rule (DR) 5–105,[6] which was in effect at the time of Defendant's trial, and Hawai'i Rules of Professional Conduct (HRPC), Rule 1.10,[7] which took ef-

---

5. Although Defendant, in his offer of proof, claimed that both he and Alonzo were represented by Sanders, the trial court's order terminating the appointment of the Public Defender's office indicated only that Alonzo was a client of the office.

6. Hawai'i Code of Professional Responsibility Disciplinary Rule 5–105 provides in relevant part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment ...

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client ...

\* \* \* \* \* \*

(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

7. Hawai'i Rules of Professional Conduct, Rule 1.10(a) provides in relevant part that in the absence of a waiver by a client:

fect on December 6, 1993 and replaced the comparable DR 5–105. However, courts, recognizing the unique status of government attorney offices, often decline to apply this "private firm" principle to government offices.

In *State v. Klattenhoff,* 71 Haw. 598, 801 P.2d 548 (1990), for example, the Hawai'i Supreme Court recognized that because the Hawai'i attorney general is, by statute, the attorney for government employees as well as the attorney for the State in criminal matters, the attorney general may represent a State employee in civil matters while investigating and prosecuting him in criminal matters, so long as the staff of the attorney general can be assigned in such a manner as to afford independent legal counsel and representation in the civil matter, and so long as such representation does not result in prejudice in the criminal matter. *Id.* at 605, 801 P.2d at 552.

In a similar vein, the United States District Court for Hawai'i held, in *United States v. Judge,* 625 F.Supp. 901 (D.Haw.1986), *aff'd,* 855 F.2d 863 (9th Cir.1988), that it was unnecessary to disqualify the entire office of the federal public defender from representing a defendant in a criminal prosecution just because the office had formerly represented a client who would be a key prosecution witness against the defendant. The court noted that the federal defender had taken adequate measures to screen office attorneys with confidential information from involvement in the criminal case.

In *Graves v. State,* 94 Md.App. 649, 619 A.2d 123 (1993), the Court of Special Appeals of Maryland surveyed the case law around the country regarding the issue of whether, for conflict of interest purposes, the public defender's office is held to the same standards as a private law firm. The court noted that in some jurisdictions, a public defender's office is treated, *per se,* like a private law firm for conflict of interest purposes, so that disqualification of one deputy public defender is imputed to the entire office. However, in other jurisdictions, which the Maryland court

chose to follow, a conflict on the part of one member of the public defender's office does not extend *per se* to others in the office unless, after a case-by-case inquiry, it is determined that facts peculiar to a case preclude representation of competing interests by members of the office. *Id.* at 664–68, 619 A.2d at 130–32.

The *Graves* court noted that under the case-by-case approach, if attorneys employed by a public defender are required to "practice their profession side by side, literally and figuratively," they are considered members of a "firm" for purposes of conflict of interest analysis regarding representation of multiple defendants, but where the practice of the attorneys in the office is so separated that the interchange of confidential information can be avoided or where it is possible to create such separation, the office is not equated with a firm and no inherent ethical bar would be present to the office's representation of antagonistic interests. *Id.* at 669–70, 619 A.2d at 133.

We agree that the case-by-case approach should be used to analyze whether a defendant represented by a deputy public defender was denied his or her right to effective assistance of counsel because of a prejudicial conflict of interest on the part of his or her attorney. Under this approach a trial court is required to conduct an evidentiary hearing to:

 1. determine whether attorneys employed by the same public defender's office can be considered the same as private attorneys associated in the same law firm;

 2. weigh factors relating to the protection of confidential information by considering whether there are separate offices, facilities and personnel; and

 3. determine whether, as a consequence of having access to confidential information, [a deputy] public defender refrained from effectively representing a defendant.

*Id.* at 671, 619 A.2d at 134. Since no such hearing was conducted in this case, the rec-

---

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone

would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

ord on appeal precludes us from evaluating Defendant's claim of ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing discussion, we vacate the order denying Defendant's motion for a new trial and remand this case for an evidentiary hearing [8] to determine whether a conflict of interest actually existed when Sanders represented Defendant and, if so, whether the conflict prejudiced Defendant's right to effective assistance of counsel at trial. If the trial court determines that a conflict existed and that the conflict preju-

diced Defendant's right to effective assistance of counsel, it shall vacate the judgment of Defendant's conviction and award Defendant a new trial. If the court determines that no prejudicial conflict existed, the court shall enter its order denying Defendant's motion for a new trial.

---

**8.** Because the public defender's office no longer represents Defendant and our holding sets forth a test for determining when a conflict of interest exists in that office, it may be prudent for the trial court to invite that office to submit a brief on the conflict issue.