**SAVOY OIL & GAS, INC., a Delaware corporation, Plaintiff,**

v.

**PRESTON OIL COMPANY, a Texas partnership.**

**No. 1:93–CV–310.**

United States District Court, W.D. Michigan, S.D.

Aug. 23, 1993.

John T. Sperla, John C. Stuive, Mark A. Van Allsburg, Mika, Meyers, Beckett & Jones, Grand Rapids, MI, for Savoy Oil & Gas, Inc., a Delaware Corporation.

John J. Lynch, Lynch, Gallagher, Lynch, Shirley & Martineau, Mount Pleasant, MI, J. Andrew Domagalski, Jeffrey D. Van Leuwen, J. Andrew Domagalski Law Offices, Richland, MI, for Preston Oil Co., a Texas Partnership.

### OPINION

QUIST, District Judge.

Plaintiff Savoy Oil & Gas, Inc., (Savoy) filed this action against defendant Preston Oil Company (Preston) alleging that Preston's sale or trade of certain seismic tapes breached a Letter Agreement and/or Seismic Letter Agreement (Agreement) entered into between the parties. This matter is before the Court on Plaintiff's Motion to Disqualify Counsel for Preston. This Court heard oral arguments on this motion on July 23, 1993. At the conclusion of the hearing, the Court invited counsel to provide supplemental materials. I have reviewed these additional submissions.

### Background Facts

Mr. Thomas Pangborn, a principal of Savoy, has conducted business with Preston pursuant to several agreements. The agreement entered into between the parties on December 16, 1985, provided that Mr. Pangborn would locate, evaluate and acquire oil and gas leases on behalf of himself and Preston. Pursuant to the agreement, Preston agreed to provide financing for the venture. According to the affidavit of Mr. Pangborn,

Preston later expressed a desire to change the agreement. The parties met in Houston in September of 1988 and agreed to terminate or modify their existing relationship. After the meeting, Mr. Pangborn contacted Mr. J. Andrew Domagalski, an attorney, and asked him to represent him with regard to revising the agreement. Mr. Pangborn's affidavit states that he disclosed confidential information to Mr. Domagalski regarding his relationship with Preston and the two of them discussed strategies for the new agreement. Mr. Domagalski denies this allegation. Mr. Domagalski's affidavit states that Mr. Pangborn never disclosed any confidential information or strategies to him. Mr. Domagalski drafted a letter agreement on behalf of Mr. Pangborn which was forwarded to Preston in September of 1988 but was never executed. The next month, Mr. Pangborn sent a letter to Preston which said that both parties had agreed not to proceed with Mr. Domagalski's modified agreement.

Agreements [1] were ultimately executed in April of 1989. These Agreements form the basis of this lawsuit. Mr. Pangborn claims that although the 1989 Agreements were negotiated by the law firm of Mika, Meyers, Beckett & Jones, the language drafted by Mr. Domagalski was used as a starting point. Mr. Pangborn asserts that all of the issues and strategies he discussed with Mr. Domagalski were included in the 1989 Agreements. Therefore, he contends that Mr. Domagalski's current representation of Preston creates a conflict of interest and is a violation of Mr. Domagalski's duty to a former client. Plaintiff's motion requests that Mr. Domagalski and the other lawyers in his firm be disqualified from representing Preston in this matter. Defendant denies these allegations and strenuously opposes the disqualification of Mr. Domagalski.

### Legal Analysis

Michigan Rules of Professional Conduct 1.9(a) and 1.10(a) provide:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a

---

**1.** The executed Agreements consist of the Letter Agreement, the Termination Agreement, the Ac- quisition Agreement, and the Seismic Letter Agreement.

substantially related matter in which that persons interests are materially adverse to the interests of the former client unless the former client consents after consultation.

M.R.P.C. 1.9(a).

* * * * * *

While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules . . . 1.9(a). . . .

M.R.P.C. 1.10(a).

The Michigan Rules of Professional Conduct provide the applicable standard of professional conduct for members of the bar of this Court pursuant to Western District Local Rule 17.[2]

The parties in this case do not dispute that Mr. Domagalski formerly represented Mr. Pangborn. Nor do they dispute that Preston's interests in this case are materially adverse to those of Mr. Pangborn. There is also no dispute that neither Mr. Pangborn nor Savoy has consented to Mr. Domagalski's representation of Preston. However, Preston argues that Mr. Domagalski's former representation of Mr. Pangborn did not involve matters which are the same or substantially related to the matters involved in this action. Therefore, Preston contends that there is no conflict of interest and that Mr. Domagalski should not be precluded from representing it in this litigation.

In *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980), the court stated that a case bears a substantial connection to an earlier one if "the factual contexts of the two representations are similar or related." *Id.* at 998. The court noted that this rule of disqualification helps to preserve the secrets and confidences communicated to the lawyer by the client. It also protects a lawyer's professional commitment to his client. The court noted that this commitment is endangered if it is possible that the lawyer will change sides in a substantially related matter.

In *General Electric Co. v. Valeron Corp.*, 608 F.2d 265 (6th Cir.1979), General Electric brought a patent infringement action against defendant Valeron. Shortly after the case was filed, Mr. Cantor entered an appearance on behalf of Valeron. General Electric moved to disqualify Cantor because he had formerly been retained by General Electric as a patent lawyer to prepare drafts of patent applications. General Electric argued that Cantor's work substantially related to the subject matter of the pending lawsuit and that disqualification was required. The trial court agreed and the Sixth Circuit affirmed the trial court's decision. In doing so, the court rejected Valeron's argument that General Electric had to show a substantial relation between Cantor's prior work for General Electric and the actual issues of the present lawsuit. The court stated:

[A] former client seeking to disqualify an attorney who appears on behalf of his adversary, need only to show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented him. (Emphasis in original.)

*General Electric Co.*, 608 F.2d 265, 267 (citing *Melamed v. ITT Continental Baking Co.*, 592 F.2d 290 (6th Cir.1979)).

It appears that the matters involved in the lawsuit currently pending before this Court are substantially related to the matters in which Mr. Domagalski represented Mr. Pangborn. This case involves Savoy's allegation that Preston breached an Agreement entered into on April 20, 1989, by providing seismic information to West Bay. The amended agreement drafted by Mr. Domagalski in 1988 contained a provision regarding seismic information. Paragraph six provided that all seismic information would be jointly owned by Preston and Pangborn.[3]

---

**2.** Local Rule 17 states:

The standards of professional conduct of members of the bar of this court shall include the applicable Michigan Rules of Professional Conduct, except those rules a majority of the judges of this court exclude by administrative order. For a willful violation of any of these standards, an attorney may be subjected to appropriate disciplinary action.

**3.** Paragraph 6 states:

From and after October 1, 1994, all seismic information which was theretofore acquired by Pangborn under the Modified Agreement shall

Preston contends that because Savoy's complaint makes no allegation with respect to a breach of the 1988 contract there is no conflict of interest. According to Preston, the Domagalski draft and the executed Agreement have "generic similarities" but they are not substantially similar. I disagree. Although Preston's alleged breach involves the 1989 Agreement, I find that Mr. Domagalski's representation of Mr. Pangborn in 1988 is substantially related to this litigation.

Mr. Domagalski drafted proposed language relating to the ownership and disposition of seismic data. The 1989 Agreements, which form the basis of this lawsuit, address the same subject matter. As I stated during oral argument, contract negotiations do not always proceed without interruption. I have compared the agreement drafted by Mr. Domagalski with the 1989 Agreements and find that they contain similar provisions. Even if the precise language drafted by Mr. Domagalski was never incorporated into the 1989 Agreement, Mr. Domagalski discussed these matters with Mr. Pangborn and provided legal advice concerning them. I believe that his representation of Mr. Pangborn was substantially related to this matter and it is improper for Mr. Domagalski to now "switch sides" and represent Preston. For the reasons stated above, plaintiff's motion to disqualify counsel for Preston will be granted. An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that plaintiff's Motion to Disqualify Counsel for Defendant Preston Oil Company (docket entry # 27) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant shall have new counsel file an appear-

be jointly owned by Preston and Pangborn and shall be kept and maintained by Pangborn at Traverse City, Michigan. Preston and Pangborn shall have free and complete access thereto and copies thereof will be provided to either party upon request by the other.

Subject only to any existing restrictions imposed by third parties, all of the aforesaid seismic information shall be free to be used by

ance on its behalf within fourteen (14) days of this Order.

either Preston or Pangborn in connection with each such party's individual efforts to develop, sell, or otherwise trade or deal with prospects that may be affected thereby, such right to include the right to furnish copies thereof to third parties, provided, however, that no such seismic information shall be sold by either party without the written consent of the other.