PEOPLE v WATERSTONE

Docket No. 294667. Submitted February 5, 2010, at Detroit. Decided
March 4, 2010, at 9:05 a.m.

Mary M. Waterstone was charged by the Attorney General in the
36th District Court with four counts of misconduct in office
involving defendant's alleged conduct while she was a circuit court
judge in knowingly permitting witnesses to commit perjury during
the trial of Alexander Aceval and Ricardo Pena for narcotics
trafficking. Defendant moved, in part, to disqualify the Attorney
General's Office, contending that the Attorney General had a
conflict of interest and could not bring the charges against her
because the Attorney General had represented defendant in a
federal lawsuit filed by Aceval in which Aceval alleged under 42
USC 1983 that his civil rights were violated as a result of the
admission of the perjured testimony. The district court denied the
motion to disqualify the Attorney General. Defendant appealed to
the Wayne Circuit Court, Daniel A. Hathaway, J., which affirmed
the order of the district court denying the motion to disqualify the
Attorney General's Office. The Court of Appeals, ZAHRA, P.J., and
WILDER and K. F. KELLY, JJ., denied defendant's delayed application
for leave to appeal in an unpublished order, entered December 17,
2009 (Docket No. 294667). The Supreme Court, in lieu of granting
leave to appeal, remanded the case to the Court of Appeals for
consideration as on leave granted, limited to the issues whether
the Attorney General's prosecution of defendant is consistent with
the requirements of MRPC 1.7, 1.9, and 1.10 and with *Attorney
General v Pub Serv Comm*, 243 Mich App 487 (2000). 485 Mich
1016 (2010).

The Court of Appeals *held*:

1. Under the particular facts of this case, the Attorney General
should be disqualified for violating the MRPC when, without
obtaining defendant's consent, the Criminal Division of the Attor-
ney General's Office prosecuted defendant regarding perjury at
Aceval's trial after the Public Employment, Elections, and Tort
(PEET) Division of the Attorney General's Office defended defen-
dant from Aceval's federal civil claims arising from Aceval's trial.

2. The assistant attorney general from the PEET Division
learned confidential information from defendant in the course of

representing her in the federal case. Defendant is not a current client of the Attorney General, because representation of defendant by that assistant attorney general ceased when the assistant attorney general notified defendant that the federal action had been dismissed. The present action is substantially related to the federal action because both cases arose from the same alleged perjury at Aceval's criminal trial. The Attorney General's instant criminal prosecution is materially adverse to the defense offered by the Attorney General on defendant's behalf in the federal civil case.

3. The Attorney General's Office is a law firm under the extraordinary circumstances of this case and for purposes of this case only.

4. Given the PEET Division's routine role in defending judges in federal §1983 civil claims, it is unreasonable for the Attorney General to have failed to carry out a conflict check before the Criminal Division undertook its investigation. Knowledge of the potential federal case can be inferred from the circumstances and, therefore, the Attorney General should have obtained the consent of his former client, defendant, before the Criminal Division undertook its investigation.

5. The Attorney General has an affirmative duty to perform a conflict check before undertaking the prosecution of a judge or other person whom the Attorney General's Office is statutorily required to defend.

6. Defendant was prejudiced by the tactics employed by Attorney General investigator Michael Ondejko when, during the course of the criminal investigation, he interviewed defendant while serving an investigative subpoena. Any information obtained from defendant as a result of the violation of the Michigan Rules and Professional Conduct cannot be used. Ondejko did not communicate to defendant information reasonably sufficient to permit defendant to appreciate the significance of the matter in question. Defendant was not adequately consulted about the conflict before the Attorney General's investigation of her conduct.

7. Defendant was not prejudiced as a result of her interview by Assistant Attorney General John Dakmak during the course of the criminal investigation.

8. The analysis employed in this case does not run afoul of the principles set forth in *Attorney General v Pub Serv Comm*, 243 Mich App 487 (2000), which held that the Attorney General's unique status requires accommodation, not exemption, under the Michigan Rules of Professional Conduct. That case holds that the Attorney General is subject to the Michigan Rules of Professional

Conduct. The rules do not permit a law firm to knowingly represent a party whose interests are adverse to those of former clients in the same or a substantially related matter without consultation. Here, the Attorney General failed to consult with defendant to obtain her consent. The Attorney General must withdraw from the prosecution of this case to remedy the conflict of interest. The order of the circuit court must be reversed and the case must be remanded to the circuit court for further proceedings.

Reversed and remanded.

1. PROSECUTING ATTORNEYS — CONFLICTS OF INTEREST.

A conflict of interest involving an assistant prosecuting attorney does not automatically require recusal of the entire staff of the prosecutor's office, rather, courts examine whether the assistant prosecuting attorney at issue has supervisory authority over other prosecutors in the office or the authority to make policy.

2. ATTORNEY AND CLIENT — CONFLICTS OF INTEREST.

A lawyer who has formerly represented a client in a matter may not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; a case is substantially associated with another case if the factual contexts of the two representations are similar or related (MRPC 1.9).

3. ATTORNEY GENERAL — CONFLICTS OF INTEREST.

The Attorney General has the responsibility to recognize and avoid conflicts of interest; the Attorney General has an affirmative duty to perform a conflict check before undertaking the prosecution of a judge or other person whom the office is statutorily required to defend.

4. PROSECUTING ATTORNEYS — CONFLICTS OF INTEREST.

The disqualification of an entire prosecutor's office for an alleged conflict of interest is not automatic; courts must consider the client's showing of actual prejudice and examine the extent to which the client's confidential information could be used to his or her detriment.

5. ATTORNEY AND CLIENT — CONFLICTS OF INTEREST.

A party seeking the disqualification of counsel for a conflict of interest bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result.

6. ATTORNEY GENERAL — MICHIGAN RULES OF PROFESSIONAL CONDUCT.

>The Attorney General is subject to the Michigan Rules of Professional Conduct; the unique status of the Attorney General requires accommodation, not exemption, under the rules; mechanical application of the rules to the Attorney General is not possible and dual representation by the Attorney General may be allowed in certain circumstances not otherwise permitted in the arena of private practice.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Anica Letica*, Assistant Attorney General, for the people.

*Gerald K. Evelyn, Juan A. Mateo*, and *Paul C. Smith* for defendant.

Before: ZAHRA, P.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM. This case is before us on remand from the Supreme Court for consideration as on leave granted, *People v Waterstone*, 485 Mich 1016 (2010), limited to the issues whether the Attorney General's prosecution of defendant is consistent with the requirements of Michigan Rules of Professional Conduct (MRPC) 1.7, 1.9, and 1.10 and consistent with *Attorney General v Pub Serv Comm*, 243 Mich App 487; 625 NW2d 16 (2000) (*AG v PSC*). We reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves defendant's alleged conduct while she was a circuit court judge in knowingly permitting witnesses to commit perjury at a criminal trial. In 2005, the Wayne County Prosecutor charged Alexander Aceval and Ricardo Pena with narcotics trafficking and defendant presided over their jury trial. Inkster Police Officers Scott Rechtzigel and Robert McArthur allegedly lied at trial to protect the identity of their confi-

dential informant, Chad Povish, who also allegedly lied at trial.[1] Wayne County Assistant Prosecuting Attorney Karen Plants was aware of the perjury and discussed it with defendant ex parte. Defendant directed that the transcripts of the two ex parte meetings initially be sealed in an attempt to preserve the issue for appellate purposes. One jury convicted Pena, but Aceval's jury could not reach a decision. Aceval eventually pleaded guilty.

In 2006, Aceval, acting in propria persona, filed a federal civil rights lawsuit under 42 USC 1983, naming defendant along with 13 others. Paragraph 27 of the complaint provided, in part:

> In no less than two (2) secret ex-parte hearings with Circuit Court Judge Mary Waterstone, Karen Plants told the judge of perjured testimony by Robert McArthur, Scott Rechtzigel and Chad Povish. . . . [J]udge Waterstone and Plants then had the hearing transcript sealed. They also just allowed this perjured testimony to go to the jury. The judge did also order that the defense could not get a phone record that would have lead [sic] to the discovery of the perjured testimony. All of this has now been admitted to by Karen Plants and Judge Mary Waterstone.

Also, paragraph 28-12 provided:

> Mary Waterstone was the Circuit Court Judge at plaintiff's trial. There is now unsealed transcript showing that this judge knew of the perjured testimony an[d] withheld it from plaintiff and the jury. Also this judge issued an order about a phone record to keep plaintiff from learning about the perjured testimony an[d] misled [the] defense stating "No one lies in my court room."

General Counsel for the Michigan Supreme Court directed the Attorney General to provide counsel to

---

[1] For additional facts regarding the trial, see *People v Aceval*, 282 Mich App 379; 764 NW2d 285 (2009).

defendant. The Attorney General assigned Assistant Attorney General Steven Cabadas of the Public Employment, Elections, and Tort (PEET) Division to represent defendant. Cabadas reportedly spoke to defendant three times on the telephone and filed a response on her behalf. The federal court dismissed Aceval's lawsuit on March 17, 2008, because Aceval had failed to provide the court with his address.

The Wayne County Prosecutor decided that, because of a conflict of interest, she could not bring criminal charges regarding the perjury. The prosecutor asked the Michigan Prosecuting Attorney's Coordinating Council to assign a special prosecutor. Prosecutors from four different counties declined to pursue the matter. The Attorney General ultimately accepted the prosecution and assigned the case to its Criminal Division, specifically assistant attorneys general William Rollstin and John Dakmak.[2]

During the course of the criminal investigation in November of 2008, Attorney General investigator Michael Ondejko interviewed defendant at her home, while serving an investigative subpoena. The following exchange occurred during that interview, which Ondejko recorded:[3]

> *Mr. Ondejko*: And [Dakmak is] gonna be the assistant in charge of that—those interviews. So we've got you on the list as well as about 20 others.
>
> *Ms. Waterstone*: As far as me.
>
> *Mr. Ondejko*: Yeah.
>
> *Ms. Waterstone*: This is in Karen Plants' investigation.
>
> *Mr. Ondejko*: Yes, yes. That's—

---

[2] Mr. Dakmak since has left the employ of the Attorney General.

[3] It is unclear whether defendant knew that Ondejko was recording the interview.

*Ms. Waterstone*: I assumed that it—

*Mr. Ondejko*: I—

*Ms. Waterstone*: —that's what it was about.

*Mr. Ondejko*: [I] should've mentioned that.

*Ms. Waterstone*: That's okay. That was a—it was kind of an assumption, but I thought I should reclarify.

*Mr. Ondejko*: Yeah. That's kinda, you know, that's what it centers around. And then the officers who, you know, perjured themselves.

*Ms. Waterstone*: They did.

Before giving defendant the subpoena, Ondejko stated that it looked as though the officers had perjured themselves and stated "the only question is why this all happened." Defendant then spoke to Ondejko at length; the interview lasted 30 minutes and the resulting transcript exceeds 30 pages. Defendant shared her thoughts regarding why the perjury had occurred. Near the end of the interview, Ondejko gave the subpoena to defendant.

In response to the investigative subpoena, defendant appeared without counsel in December of 2008. The following exchange occurred:

*Mr. Dakmak*: You understand that you have the right not to incriminate yourself, given any act that could get you charged or potentially charged with a criminal act at any point. Do you understand that?

*Ms. Waterstone*: I do.

*Mr. Dakmak*: And, of course, you have the right to consult with an attorney who could advise you on whether or not you should answer those questions. Do you understand?

*Ms. Waterstone*: I understand.

*Mr. Dakmak*: You have the right not to—strike that. Do you have any questions for me regarding your rights afforded to you under the Michigan [or the] United States Constitution?

*Ms. Waterstone*: No. My understanding was this involved the investigation regarding Karen Plants; is that correct?

*Mr. Dakmak*: Involving the investigation surrounding the trial of Alexander Aceval, Ricardo Pena, Wayne County Prosecutor's Office and the police department.

*Ms. Waterstone*: Okay. That's a little broader that I understood.

*Mr. Dakmak*: Just so you know, we haven't narrowed it down to a defendant. We haven't charged anybody with a crime yet. We're investigating the acts, everything surrounding it. Do you understand?

*Ms. Waterstone*: I understand.

*Mr. Dakmak*: Do you want to go forward and answer the questions we put forth to you today?

*Ms. Waterstone*: Sure.

In March 2009, the Attorney General brought a felony complaint against defendant, Plants, and the officers. The Attorney General charged defendant with four felony counts of misconduct in office; two counts related to the two ex parte communications, one count involved the allowing of perjured testimony and the final count concerned the concealment of perjured testimony.

Defendant moved to dismiss the charges, arguing that the criminal complaint lacked any specific allegations of criminal intent. Defendant further argued that the charges ran afoul of principles of judicial immunity and separation of powers.[4]

Defendant also moved to disqualify the Attorney General because of his representation of her in the

---

[4] Because the Supreme Court has limited the issues for consideration to the issues whether the Attorney General's prosecution of defendant is consistent with the requirements of MRPC 1.7, 1.9 and 1.10 and *AG v PSC*, these grounds for dismissal will not be further discussed.

federal civil lawsuit. Defendant contended that the Attorney General had a conflict of interest and could not bring the charges against her. In an attached affidavit, defendant indicated that she had a series of confidential communications with Cabadas about the events that had occurred at the Aceval/Pena trial.

The Attorney General answered that no conflict of interest existed because Cabadas had not communicated any confidential information to the Criminal Division. Cabadas also did not participate in the investigation or the prosecution of the criminal case against defendant. The Attorney General added that, in any event, any remedy would be limited to the appointment of a special prosecutor, not the dismissal of the charges. The Attorney General detailed certain screening procedures and provided an affidavit from Cabadas regarding his limited contacts with defendant.

The district court ruled that the Attorney General should not be disqualified, noting that *AG v PSC* held that the Attorney General's unique nature precludes the mechanical application of the MRPC. The court observed that Aceval's federal case had ended before the Criminal Division began its investigation. The court examined affidavits from assistant attorneys general Cabadas, Rollstin, and Frank Monticello, the Attorney General's ethics officer, and stated that it was satisfied that no sharing of information occurred. The court determined that the MRPC had not been violated and denied defendant's motion to disqualify the Attorney General.

Defendant appealed to the circuit court, which permitted the parties to conduct additional discovery. The Attorney General submitted an affidavit, indicating that his office had been assigned 23,500 new cases in the previous year. He stated that he did not review

every incoming case. He had no knowledge of Aceval's federal civil action against defendant before the Criminal Division authorized criminal charges and had never discussed the federal civil case with Cabadas.

The circuit court ruled that the Attorney General need not be disqualified on the basis of a conflict of interest. The court ruled that the Attorney General's Office operated as a firm, but it had sufficiently screened Cabadas pursuant to MRPC 1.10 and also the divisions acted independently. The court also decided that defendant had not been prejudiced as a result of Cabadas' prior representation of her in the federal civil case. The circuit court was not convinced by defendant's argument that the Attorney General should have advised her that she was a target in the ongoing investigation, ruling that defendant not only was on notice that the investigation was not limited in scope, but also had been advised of her constitutional rights.

Defendant filed a delayed application for leave to appeal in this Court, which initially denied leave in an unpublished order, entered December 17, 2009 (Docket No. 294667). Defendant sought leave to appeal in the Supreme Court, which, in lieu of granting leave to appeal, remanded for consideration as on leave granted and limited the issues as described earlier in this opinion.

## II. THE PARTIES' ARGUMENTS

Defendant contends that the Attorney General should be disqualified because of Cabadas' representation of her in the related federal civil matter. She maintains that the federal case has not been completely resolved, because it was dismissed without prejudice, and the Attorney General could be called upon to continue to represent her in that action. There is a

conflict: the assistant attorneys general never advised defendant that she was a target before interviewing her in conjunction with this criminal matter. Even if the Attorney General did not have knowledge of the federal suit when he began the investigation in this case, the Attorney General now is aware of the conflict. A "conflict wall" is not sufficient here; defendant's consent to the representation must be obtained.

The Attorney General answers that he and his office need not be disqualified. The Attorney General's Office was statutorily required to defend defendant, a state employee, in the federal civil case and the Attorney General also must act as the chief law enforcement officer for the state. The PEET Division, a separate division located 90 miles away from the Criminal Division, represented defendant in the federal lawsuit. No confidential communications were disclosed and the assistant attorneys general in the Criminal Division were unaware of Cabadas' involvement in the earlier civil lawsuit. Although defendant complains that she was not advised that she was a target of the investigation, statutory law does not require such advice and defendant was clearly advised of her rights when she appeared pursuant to the investigative subpoena.

### III. STANDARD OF REVIEW

Whether a conflict of interest exists is a question of fact. *Camden v Kaufman,* 240 Mich App 389, 399; 613 NW2d 335 (2000). This Court reviews for clear error the trial court's findings of fact regarding a motion to disqualify counsel. *Lamont Community Church v Lamont Christian Reformed Church,* 285 Mich App 602, 613; 777 NW2d 15 (2009); *People v Tesen,* 276 Mich App 134, 141; 739 NW2d 689 (2007). The Court reviews de novo the trial court's

application of the law to the facts, as well as the application of " 'ethical norms.' " *Id.* (citation omitted).

## IV. ANALYSIS

### A. THE MICHIGAN RULES OF PROFESSIONAL CONDUCT

Defendant contends that the Attorney General should be disqualified for violating the MRPC when the Criminal Division prosecuted her regarding perjury at the Aceval/Pena trial after the PEET Division defended her from Aceval's federal civil claims arising from the same trial. We agree under the particular facts of this case.

In this case, the Attorney General accepted the role of prosecutor after four other prosecutors declined. A prosecutor's fundamental obligation is " 'to seek justice, not merely to convict.' " *People v Pfaffle*, 246 Mich App 282, 291; 632 NW2d 162 (2001) (citation omitted). If a conflict of interest arises for a prosecutor, the Legislature has provided for the appointment of a special prosecutor. *People v Herrick*, 216 Mich App 594, 598; 550 NW2d 541 (1996). See MCL 49.160(1), which provides:

> If the prosecuting attorney of a county determines himself or herself to be disqualified by reason of conflict of interest or is otherwise unable to attend to the duties of the office, he or she shall file with the attorney general a petition stating the conflict or the reason he or she is unable to serve and requesting the appointment of a special prosecuting attorney to perform the duties of the prosecuting attorney in any matter in which the prosecuting attorney is disqualified or until the prosecuting attorney is able to serve.

The disqualification of prosecutors because of a conflict of interest generally falls into two categories. *People v Doyle*, 159 Mich App 632, 641-642; 406 NW2d

893 (1987), mod on reh, 161 Mich App 743 (1987). The category at issue is disqualification for conflicts arising out of a professional attorney-client relationship, including when the prosecutor has become privy to confidential information. See *id*. Cases regarding prosecutor disqualification examine whether the prosecutor learned confidential information that he or she ethically may not use against the defendant and whether knowledge of that information may be imputed to other members of the prosecutor's office. *Id*. The party moving for disqualification has the burden to show a conflict of interest and specific prejudice. *Kubiak v Hurr*, 143 Mich App 465, 471; 372 NW2d 341 (1985).

Here, the Attorney General himself does not have a direct conflict of interest, because his affidavit reflects that he was not privy to confidential information in the federal case. The instant case involves three assistant attorneys general: Cabadas, Rollstin, and Dakmak. Recusal of a prosecutor's entire office, as requested here, is not automatic where an assistant prosecuting attorney is involved. *Doyle*, 159 Mich App at 645. Rather, courts examine whether the assistant prosecuting attorney at issue has supervisory authority over other prosecutors in the office or has the authority to make policy. *People v Mayhew*, 236 Mich App 112, 127; 600 NW2d 370 (1999). The three assistant attorneys general here do not appear to have authority over other attorneys in the office or the authority to make policy. Thus, disqualification is not automatic; hence, we examine whether Cabadas learned confidential information that he may not use against defendant and whether knowledge of that information may be imputed to other assistant attorneys general.

Despite the Attorney General's arguments to the contrary, we conclude that Cabadas learned confidential

information from defendant in the course of representing her in the federal case. Defendant's affidavit indicates that she shared confidential information with Cabadas and told him the basis for the rulings she made during the Aceval/Pena trial. We conclude that Cabadas' affidavit that defendant did not share confidential information with him is disingenuous, particularly in light of the answer to the complaint. Courts recognize that a presumption arises that, during representation, a client discloses potentially damaging confidences to his or her attorney. *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 609; 603 NW2d 824 (1999). See also the comment to MRPC 1.6, which provides, in part, that where lawyers are duty bound to maintain confidentiality, clients are advised to communicate "fully and frankly" with the lawyer, even if the information is damaging or embarrassing. Accord, the comment to MRPC 1.0, indicating that clients who know their communications will be private are more inclined to adhere to their legal obligations. Further, an attorney has a duty of confidentiality that involves " 'all confidential information, whether privileged or unprivileged, and whether learned directly from the client or from another source.' " *City of Kalamazoo v Mich Disposal Serv Corp*, 125 F Supp 2d 219, 242 (WD Mich 2000) (citation omitted).

Under statute, the Attorney General is charged with defending judges from lawsuits, 2006 PA 345, art 7, part 2, § 302(2)[5]; and assistant attorneys general are certainly aware of that fact. Although the Criminal Division may not have been specifically aware that Aceval

[5] Article 7, part 2, § 302(2) of 2006 PA 345 provides: "The attorney general shall defend judges of all state courts if a claim is made or a civil action is commenced for injuries to persons or property caused by the judge through the performance of the judge's duties while acting within the scope of his or her authority as a judge."

had filed a lawsuit naming defendant, the Criminal Division should have known that, had such a lawsuit been filed, the PEET Division likely would have represented defendant. It follows that, at the very least, knowledge of a potential defense of defendant by the PEET Division should be imputed to the Attorney General's Office.

As reflected in the MRPC, an attorney owes allegiance to his or her client and generally may not represent parties on both sides of a dispute. *Barkley v Detroit*, 204 Mich App 194, 203; 514 NW2d 242 (1994); *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 197; 650 NW2d 364 (2002). The Attorney General is subject to the MRPC. *AG v PSC*, 243 Mich App at 504. The conflict rules were designed " ' "to condemn the creation and existence of the dual relationship instead of merely scrutinizing the results that may flow therefrom." ' " *Barkley*, 204 Mich App at 202-203 (citations omitted).

MRPC 1.7, the rule regarding conflicts of interest of current clients, provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

> (2) each client consents after consultation.

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents after consultation. When representation of multiple clients in a single matter is under-

taken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Here, defendant is not a current client of the Attorney General. Cabadas' representation of defendant ceased when he notified defendant of the March 17, 2008, federal court dismissal. See *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994), ruling that a lawyer's representation ends "upon completion of a specific legal service that the lawyer was retained to perform." We reject defendant's stance that Cabadas should have actively terminated the attorney/client relationship with her in the federal civil case, because defendant has provided no legal authority requiring an attorney to affirmatively end the attorney/client relationship once litigation has been dismissed. Admittedly, the case was dismissed without prejudice, but it has not been reinstated and the mere possibility that Aceval might reinstate his federal civil action at some future date should not be dispositive. We also observe that over one year has passed since the federal court dismissed the suit and the period of limitations likely has expired.[6] Further, defendant seems to concede in her brief that MRPC 1.7 does not apply, because defendant identified only MRPC 1.9 and 1.10 as the specific rules at issue and did not reference MRPC 1.7 in her initial pleadings filed with this Court.

MRPC 1.9 governs conflicts of interest regarding former clients and provides that an attorney may not represent a new client whose interests are adverse to a former client, unless the former client consents:

---

[6] The period of limitations for a claim under 42 USC 1983 in Michigan is three years from when the claim accrues. *Thompson-Bey v Stapleton*, 558 F Supp 2d 767, 770 (ED Mich, 2008); MCL 600.5805(10).

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client

(1) whose interests are materially adverse to that person, and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

MRPC 1.9 prohibits a client's representation where that representation is directly or materially adverse to the interest of another client or former client. *Lamont*, 285 Mich App at 614. The matters must be the same or substantially related. The new representation must be "materially adverse."

The Attorney General maintains that Aceval's federal § 1983 civil case is not the same or substantially related to the instant criminal case. We must reject this argument because both cases arose from the same

alleged perjury at the Aceval/Pena trial. A case is substantially associated with another case if " 'the factual contexts of the two representations are similar or related.' " *Savoy Oil & Gas, Inc v Preston Oil Co*, 828 F Supp 34, 36 (WD Mich, 1993) (citation omitted). Here, both cases involve the alleged perjured testimony of the police officers and the informant. Both cases relate to defendant's alleged cover-up of that perjury by way of ex parte meetings with the prosecution. Consequently, we decide that the matters are, if not exactly the same, then substantially related.

The Attorney General also challenges whether the new representation is materially adverse to the position taken in the federal case. We decline to accept the Attorney General's attempt to minimize the advocacy within Cabadas' answer filed on behalf of defendant in Aceval's federal case. In the federal case, Cabadas denied as false the allegations of paragraph 27, where Aceval averred that defendant allowed perjured testimony to go to the jury and precluded defense counsel from obtaining a telephone record that would have unveiled the perjury. Further, Cabadas denied as false the allegations in paragraph 28-12, where Aceval argued that defendant knew of the perjured testimony, withheld it from him and the jury, and issued an order to keep him from learning about it. We decide that the Attorney General's instant criminal prosecution is materially adverse to the defense offered by the Attorney General on defendant's behalf in the federal civil case.

We find beneficial the comments to MRPC 1.9, although we acknowledge that the text of the rule, not the comments, is authoritative. See MRPC 1.0(c). The comment to MRPC 1.9 provides that a lawyer who prosecuted a defendant cannot properly represent that

defendant in a later civil action against the government regarding the same transaction. The comment later indicates that, in considering the degree of the lawyer's involvement, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."

In this case, it is clear that Cabadas could not "change sides" and participate in the criminal investigation of defendant given his confidential knowledge gained from the federal civil case. See *In re Osborne (On Remand, After Remand)*, 237 Mich App at 601-602, ruling that a conflict of interest existed when an attorney who had represented the client at a termination of parental rights hearing later joined the prosecutor's office and represented interests adverse to his former client. The question remains as to whether the entire Attorney General's Office must be disqualified in light of Cabadas' former representation.

MRPC 1.10 sets forth the limitations on a lawyer's firm regarding the representation of a party whose interests are adverse to the lawyer's former clients. The rule requires the firm to impose safeguards against improper communications and disclose those safeguards. It provides, in pertinent part:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), or 2.2. If a lawyer leaves a firm and becomes associated with another firm, MRPC 1.10(b) governs whether the new firm is imputedly disqualified because of the newly hired lawyer's prior services in or association with the lawyer's former law firm.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or

a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, is disqualified under Rule 1.9(b), unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

The comments to MRPC 1.0 and 1.10 define a law firm as a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization, and lawyers employed in a legal services organization. We consider the Attorney General's Office to be a "firm" under these circumstances and for purposes of this case only. We acknowledge that certain federal cases have ruled that a large governmental agency cannot be considered akin to a private law firm. See, e.g., *United States v Caggiano*, 660 F2d 184 (CA 6, 1981), deciding that conduct rules applying to a private law firm do not necessarily translate to a governmental agency, in part because a government attorney's duty to seek a just result differs from a private attorney's duty to channel advocacy toward vindication of a client's claim and thus decreases the temptation to evade disciplinary rules. See, also, *State v Klattenhoff*, 71 Hawaii 598, 604; 801 P2d 548 (1990), where the court observed that the ethical rules for private law firms are not applicable to the Attorney General in every case given the Attorney General's statutorily imposed duties. Further, the comment to MRPC 1.10 indicates that those employed in separate units of a legal aid organization may not necessarily constitute a firm.[7] Nevertheless, merely because the

---

[7] That comment provides, in pertinent part: "Lawyers employed in the same unit of a legal service organization constitute a firm, but not

ethics rules do not automatically translate to a governmental agency does not mean that such agencies are exempt from following the rules. Under the extraordinary circumstances of this case, where the Attorney General was asked to investigate a claim regarding his former client's admission of perjured testimony after the Attorney General had defended the client against the same claim, the Attorney General's Office must be deemed a firm. Supporting that conclusion is the comment from MRPC 1.10 that indicates, in part, that, with regard to imputed disqualification, "a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client . . . ."

We therefore find distinguishable *In the Matter of the Grand Jury Investigation of Targets*, 918 F Supp 1374 (SD Cal, 1996), cited by the prosecution, where the court discussed the risk of shared confidential information. The *Grand Jury* court stated that the "assumption of free flow of information" that is within private law firms did not apply to large governmental agencies because the risk of shared confidential information was remote. *Id.* at 1378. Here, however, the risk was not that the PEET Division would share defendant's confidential information with the Criminal Division. Rather, here the risk was that defendant would continue to believe that she was a client of the Attorney General despite the Criminal Division's prosecution against her, Plants, and the police officers, where the Criminal Division failed to consult with her regarding the conflict.

Both MRPC 1.9 and 1.10 use the term "knowingly," which the comment to MRPC 1.0 defines as "actual

necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as being associated with each other can depend on the particular rule that is involved and on the specific facts of the situation."

knowledge of the fact in question." The assistant attorneys general in the Criminal Division deny that they had knowledge of the federal civil case. Nevertheless, the comment to MRPC 1.0 also indicates that such knowledge "may be inferred from circumstances." As noted, the prosecution of a judge is an unusual event and knowledge of the potential federal case can be inferred. The Attorney General never explained why the office did not perform an automatic conflict check. Given the PEET Division's routine role in defending judges in federal § 1983 civil claims, it is unreasonable for the Attorney General to have failed to carry out a conflict check. We bear in mind that the comment to MRPC 1.7 indicates that lawyers should set forth appropriate procedures to determine whether actual or potential conflicts of interest exist, in both litigation and nonlitigation matters. Also, under the MRPC, "[e]very lawyer is responsible for observance of the Rules of Professional Conduct." See the comment to MRPC 1.0. See also Justice CORRIGAN's concurring statement in *People v Gottschalk*, 468 Mich 903 (2003), that the Attorney General should weigh conflict-of-interest issues before determining who should act as the prosecutor in future proceedings where the Attorney General previously filed an amicus curiae brief supporting the defendant's position.

Because the prosecution of a judge for permitting perjured testimony at trial is a rare occurrence, that all the more supports our belief that the Criminal Division should have conducted a conflict check before undertaking the investigation. Had the assistant attorneys general done so, the related federal case would have surfaced and the Attorney General would have consulted defendant regarding her consent. We decline to rule that the Attorney General should be exempt from imputed knowledge, where a simple conflict check

would have revealed the federal suit. We therefore conclude that knowledge may be inferred from these circumstances, and, therefore, the Attorney General should have obtained the consent of his former client, defendant.

Defendant relies on *In re Osborne*, where an attorney who had represented the respondent in a termination of parental rights proceeding later joined the prosecutor's office and appeared for the petitioner in the permanent wardship trial. This Court discussed the prejudice inherent in certain conflicts of interest:

"In *Cuyler v Sullivan* [446 US 335, 345-350; 100 S Ct 1708; 64 L Ed 2d 333 (1980)], the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts . . . it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. . . . Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler v Sullivan, supra*, 446 US [350, 348] (footnote omitted)." [*In re Osborne*, 230 Mich App 712, 717; 584 NW2d 649 (1998), vacated and remanded 459 Mich 360 (1999), quoting *Strickland v Washington*, 466 US 668, 692; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

This Court presumed prejudice in the case, stating that the extent to which the respondent's confidential information could be used to her detriment was immeasurable. *In re Osborne*, 230 Mich App at 721. The Court reversed the termination order and remanded for a new

hearing. The Court disqualified the entire Muskegon County Prosecuting Attorney's Office and directed the probate court to appoint a special prosecutor.

Our Supreme Court ruled that the disqualified lawyer should have recognized and avoided the conflict. With regard to the disqualification of the entire prosecutor's office, however, the Court ruled that several factors needed to be considered, including the extent that the disqualified lawyer shared his knowledge and the disqualified lawyer's role in the prosecutor's office. The Supreme Court remanded the case to the Court of Appeals and ordered the Court of Appeals to retain jurisdiction and remand the case to the circuit court to take additional proofs. *In re Osborne,* 459 Mich 360, 369-370; 589 NW2d 763 (1999).

On remand, after remand, this Court surmised that the Supreme Court had decided that the attorney's conflict of interest was not an error that " ' "seriously" affects the fairness, integrity, or public reputation of judicial proceedings," ' " which would have compelled automatic reversal. *In re Osborne (On Remand, After Remand),* 237 Mich App at 601-602 (citation omitted). The Court noted that the attorney testified at the hearing that he did not recall obtaining any confidential information from respondent. This Court determined that actual prejudice had not been shown and thus the Court would not reverse. *Id.* at 603.

*In re Osborne* demonstrates that attorneys have a responsibility to recognize and avoid conflicts of interest. The Attorney General shares that responsibility. The Attorney General has a particular obligation given that the PEET Division habitually defends judges. As a result, the Attorney General has an obligation to make early inquiry into situations where, as here, the Criminal Division has agreed to prosecute a case involving a

judge. We hold that the Attorney General has an affirmative duty to perform a conflict check before undertaking the prosecution of a judge or other person whom the office is statutorily required to defend.

*In re Osborne* also teaches that the disqualification of an entire prosecutor's office is not automatic. Rather, courts must consider the client's showing of actual prejudice and examine the extent to which the client's confidential information could be used to his or her detriment.

*Klattenhoff,* 71 Hawaii at 598, a case relied on by the Attorney General, also requires a showing of prejudice. *Klattenhoff* involved the Hawaii Attorney General's criminal investigation of a sheriff, who moved for disqualification because the Administrative Division of the Attorney General's Office represented him in two unrelated civil actions when the Criminal Division began its investigation. The *Klattenhoff* court noted that most states permit the Attorney General to concurrently represent conflicting interests when the Attorney General can ensure that the parties are independently represented. The court held that the Hawaii Attorney General simultaneously may represent a state employee in a civil matter while prosecuting that employee in a criminal matter, provided the Attorney General's staff can be assigned in such a manner as to afford independent legal counsel in the civil matter, and provided that representation in the civil matter does not result in prejudice in the criminal matter. *Id.* at 605.

Here, the Attorney General points out that the Criminal Division and the PEET Division are different divisions and are separately located. The affidavits reflect that the Criminal Division's assistant attorneys general did not obtain information from Cabadas for use in this prosecution. *Klattenhoff* is not akin to this

case, however, because the civil actions against the sheriff did not, as here, involve the same or a substantially related matter as the criminal matter. Where the same case is at issue, the fact that the divisions are separate is, by itself, insufficient to guard against prejudice in the criminal matter.

*Klattenhoff* directs courts to consider whether the defendant has been prejudiced in the criminal case. A party seeking the disqualification of counsel " 'bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result.' " *Rymal v Baergen,* 262 Mich App 274, 319; 686 NW2d 241 (2004) (citation omitted). Defendant maintains that she would not have spoken freely with Ondejko and the assistant attorneys general in November and December of 2008, when unbeknownst to her she was the target of an investigation, had she known that the Attorney General was not representing her. She emphasizes that Cabadas' prior representation of her caused her to later speak with investigator Ondejko and assistant attorneys general Rollstin and Dakmak without counsel present.

We agree that defendant was prejudiced by investigator Ondejko's tactics in the interview he recorded. Any information obtained from defendant as a result of the violation of the MRPC cannot be used. This Court is disturbed by the methods used by Ondejko in delivering the investigative subpoena. He took the subpoena to defendant at her home, accepted coffee, and recorded their meeting, presumably without her knowledge. He stated that he was investigating the perjury at the Aceval/Pena trial and told her, without prompting, that she was one of 20 persons subpoenaed, which suggests that she was just another witness among 20, not one among four potential defendants. Further, Ondejko

agreed with defendant when she asked whether the investigation involved Plants and he added "and the officers." He did not identify defendant as a person subject to investigation. This failure to disclose is especially significant because a judge in defendant's position could have a reasonable belief that her good faith rulings at trial would not subject her to criminal prosecution. Thus, she could reasonably assume that the Attorney General was not investigating her, but instead remained her counsel. We cannot conclude that the Attorney General communicated information "reasonably sufficient to permit [defendant] to appreciate the significance of the matter in question." See comment to MRPC 1.0.

Moreover, the Attorney General's reliance on the language of the investigative subpoena to minimize the Ondejko interview is misplaced. Although the subpoena states that the person may have legal counsel and has all constitutional rights, including the right against self-incrimination, Ondejko did not give the subpoena to defendant until after he interviewed her and he never read the rights listed on it to her. Further, the investigative subpoena lists only perjury and obstruction of justice as the crimes being investigated; notably, the subpoena does not list misconduct in office, the crime that the Attorney General has charged defendant of committing. We thus decide that defendant was prejudiced by the investigator's interview.

We reach a contrary conclusion regarding defendant's interview with Assistant Attorney general Dakmak. Before defendant's interview in December of 2008, Assistant Attorney General Dakmak read defendant's rights to her. Assistant Attorney General Dakmak indicated that the investigation included the trial, over which defendant had presided. He said that the

investigation involved "everything" and that the investigation had not been narrowed. At that time, it should have been apparent that the Attorney General was not representing defendant—indeed, defendant agreed to waive her right to counsel at that time. The record reflects that defendant herself commented that the investigation was broader than she initially imagined. Defendant is not unsophisticated in the law given her four decades as an attorney and her judicial career. See *Factory Mut Ins Co v APComPower, Inc*, 662 F Supp 2d 896, 902 (WD Mich, 2009) (noting that a client familiar with the legal system had sufficient information to give fully informed and valid consent to waive a conflict of interest).

Both parties cite *People v Davenport*, 280 Mich App 464; 760 NW2d 743 (2008), where this Court ruled that a rebuttable presumption arose that lawyers within the prosecutor's office shared confidential information because a member of the prosecutor's office previously had represented the defendant in a related matter. *Id.* at 473. The *Davenport* Court ruled that prosecutors may rebut that presumption by showing effective screening procedures to isolate the defendant's former counsel from the prosecution. This Court adopted those imposed in *Manning v Waring, Cox, James, Sklar & Allen*, 849 F2d 222, 225 (CA 6, 1988), which ruled that a firm has the burden of showing that (1) no improper communication occurred and (2) it implemented adequate safeguards to prevent future improper communications. *Davenport*, 280 Mich App at 473. This Court added that courts should consider the office's written screening procedures, the likelihood of contact between the office's attorneys, and the rules that prevented the attorney with the conflict of interest from accessing files or information regarding the conflicted case. The

court also should weigh the size of the prosecutor's office when determining whether the screening was effective.[8] *Id.* at 474-475.

*Davenport* is not on all fours with the instant case. In *Davenport*, the fact that the prosecution targeted the defendant was not in doubt; the only issue was whether the former defense counsel shared confidential information with the prosecutor. Here, however, defendant was not aware that she was a target of the investigation. The critical issue is not whether Cabadas shared defendant's confidential information with Dakmak and Rollstin, but whether defendant herself shared such information on the basis of her reasonable belief that she was a former client of the Attorney General's "firm" whose investigator questioned her under the guise of investigating others.

Accordingly, it is largely immaterial to this analysis that the Attorney General instituted screening procedures to shield Cabadas after the investigation began. Although Cabadas has been precluded from any participation in the criminal matter and staff members were informed of the conflict in March of 2009, defendant herself was not adequately consulted about the conflict before the Attorney General's investigation of her conduct and that of Plants and the police officers.

B. *AG v PSC*

The above analysis does not run afoul of the principles set forth in *AG v PSC*, where this Court examined

[8] After the trial court conducted an evidentiary hearing on remand, this Court ruled that the prosecutor's office had met its burden to show that it took adequate steps to prevent improper communications and noted that the record did not contain evidence of any improper communications about the case. *People v Davenport (After Remand)*, 286 Mich App 191, 195-197; 779 NW2d 191 (2009).

whether a conflict of interest existed when the Attorney General was both the party appellant and counsel for the appellee. The Court noted that the Attorney General is a constitutionally mandated executive heading a principal department of state government. *AG v PSC*, 243 Mich App at 496. See Const 1963, art 5, § 3. Michigan statutory law permits the Attorney General to intervene in actions where the interests of the state require it. *AG v PSC*, 243 Mich App at 496, citing MCL 14.101. Additionally, the Legislature has recognized that the Attorney General has a "unique mandate" to perform all legal services for a principal executive department or a state agency. *AG v PSC*, 243 Mich App at 497. The Attorney General's duties also include those at common law. *Id.* This Court decided that the MRPC may not always apply to the Attorney General; rather, the circumstances

> suggest the need for studied application and adaptation of the rules of professional conduct to government attorneys such as the Attorney General and her staff, in recognition of the uniqueness of her office and her responsibility as the constitutional legal officer of the state to represent the various and sometimes conflicting interests of numerous government agencies. In other words, the Attorney General's unique status *requires accommodation, not exemption, under the rules of professional conduct. [Id.* at 506 (emphasis in original).]

This Court further ruled:

> [T]he rules of professional conduct do apply to the office of attorney general; [but] mechanical application of these rules is not possible because of the unique nature of that office, thus allowing dual representation in certain circumstances not otherwise permitted in the arena of private practice . . . . [*Id.* at 516.]

Pursuant to *AG v PSC*, this Court does not mechanically apply the MRPC to the Attorney General. We

consider the unique nature of the Attorney General's Office and acknowledge that is, in part, what caused the conflict here. The Attorney General is statutorily bound to defend judges in civil suits, 2006 PA 345, art 7, part 2, § 302(2); the Attorney General also prosecutes cases where county prosecutors do not, MCL 49.160. Nevertheless, *AG v PSC* holds that the Attorney General is subject to the MRPC—the case does not exempt the Attorney General from the conduct rules. As illustrated, the MRPC do not permit a firm to knowingly represent a party whose interests are adverse to those of former clients in the same or a substantially related matter without consent after consultation. Here, the Attorney General failed to consult with defendant to obtain her consent.

The Attorney General argues that *AG v PSC* is distinguishable because here the Attorney General is not a named party. Defendant counters that although the Attorney General here is not a named party, his interests are exactly the same as if he were. We do not find this point dispositive. In this case, when the Attorney General's investigation of defendant is examined under the MRPC, an insurmountable conflict of interest arises.

## V. CONCLUSION

We conclude that the Attorney General violated the MRPC in undertaking the prosecution of defendant regarding misconduct in office in conjunction with the Aceval trial, where the Attorney General formerly defended her against Aceval's federal claims, without first obtaining her consent. Although we do not automatically apply the MRPC pursuant to *AG v PSC*, the unusual circumstances of this case cannot permit the accommodation sought by the Attorney General. To

remedy the conflict of interest, we direct that the Attorney General withdraw from the prosecution of this case. We remand for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.