# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

AARON LEE PAULITCH,

       Defendant-Appellant.

UNPUBLISHED
July 26, 2018

No. 337949
Mackinac Circuit Court
LC Nos. 2016-003708-FH;
          2016-003709-FH

Before: MURRAY, C.J., and HOEKSTRA and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of delivery of less than 50 grams of morphine, MCL 333.7401(2)(a)(*iv*), and two counts of maintaining a drug house, MCL 333.7405(1)(d). He was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent terms of 30 to 480 months' imprisonment for each delivery conviction and 24 to 48 months' imprisonment for each maintaining a drug house conviction. Defendant appeals as of right. We affirm, but remand lower court docket number 2016-003708-FH to the trial court for correction of the judgment of sentence.

## I. FACTS

The TRIDENT task force of the Sault Tribe Police investigates suspected drug activity in the eastern region of Michigan's Upper Peninsula. Because of the Upper Peninsula's tightly knit community environment, drug dealers typically only sell to individuals they know personally. The task force therefore conducts many of its investigations by arranging controlled purchases of drugs by confidential informants (CIs). In the present case, TRIDENT Detective James McLeod testified that CI Lindsay Andrews notified him that she would be able to purchase morphine tablets from Gina Briggs and Ashley Moses, intermediaries who purchased from defendant. During trial, Andrews explained that she used Briggs and Moses as intermediaries because defendant had previously refused to deal directly with her.

A controlled purchase involving Briggs, Andrews, and a second CI was arranged for October 6, 2015. McLeod testified that before each controlled purchase, CIs are searched for drugs and money, are fitted with a recording device, and are provided prerecorded money with which to make the purchase. Briggs, Andrews, and the second CI met at a McDonald's parking lot and drove in Briggs' vehicle to defendant's residence. Briggs instructed Andrews and the second CI to lie down in the vehicle to avoid detection by defendant while Briggs entered and

remained in defendant's house for several minutes. Andrews testified that when Briggs returned to the vehicle, she handed Andrews three 60-milligram morphine tablets. McLeod testified that, when the transaction was complete, Andrews turned the three morphine tablets over to him.

On October 9, 2015, two more controlled purchases took place. The first occurred between Briggs and the second CI. Surveilled by TRIDENT agents, Briggs initially drove alone to defendant's home, where she testified she obtained morphine tablets from defendant. She then met with the second CI to deliver two morphine tablets, which were thereafter turned over to the agents. The second controlled purchase occurred between Moses and Andrews. Andrews testified that she picked up Moses and that the two drove down a dead end road, where defendant met them. TRIDENT agents confirmed identifying both defendant and his truck at the dead end. According to Andrews' testimony, Moses exited the vehicle and made the exchange with defendant. Following the transaction, Andrews turned over to McLeod two 60-milligram tablets of morphine.

As a result of the October 6 and second October 9 transactions, defendant was charged with two counts of delivery of less than 50 grams of morphine, MCL 333.7401(2)(a)(*iv*); two counts of conspiracy to deliver morphine, MCL 750.157a; two counts of maintaining a drug house, MCL 333.7405(1)(d); one count of using a computer to commit a crime, MCL 752.796; and one count of delivery of a Schedule 1, 2, or 3 controlled substance, MCL 333.7401(2)(b)(*ii*). However, after the close of its proofs during trial, the prosecution dismissed the two conspiracy charges and the single charge for delivery of a Schedule 1, 2, or 3 controlled substance. Following trial, the jury acquitted defendant of using a computer to commit a crime but found him guilty of two counts of delivery of less than 50 grams of morphine and two counts of maintaining a drug house.

## II. ANALYSIS

### A. AUDIO RECORDINGS

During trial, the prosecution played audio recordings of the controlled purchases, which included statements made by Briggs, Moses, and the second CI. Defendant broadly contends that the recorded statements constituted inadmissible hearsay and that the non-testifying second CI's statements in particular violated defendant's right to confrontation under the Sixth Amendment. We disagree with each of these arguments.

Whether to admit or exclude evidence is a decision that falls within the trial court's discretion and is reviewed for an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 94; 854 NW2d 531 (2014). Preliminary questions of law regarding whether an evidentiary rule applies to the facts are reviewed de novo. *Id*. Whether certain statements presented at trial violate a defendant's Sixth Amendment right to confrontation is a question of constitutional law that this Court reviews de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011). However, defendant failed to preserve his challenge under the Confrontation Clause, and this Court thus reviews the issue for plain error affecting substantial rights. See *People v Walker*,

273 Mich App 56, 65-66; 728 NW2d 902 (2006).  To avoid forfeiture of a claim under the plain error rule, three elements must be satisfied:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.  The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings.  It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.  Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse.  Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence.  [*Id*. at 66 (quotation marks and citations omitted).]

Hearsay is a statement made by a declarant outside the context of trial or a hearing offered to prove the truth of the matter asserted.  MRE 801(c).  Generally, hearsay is inadmissible absent an established exception.  MRE 802.  When a defendant fails to articulate with particularity which statements he contends constitute inadmissible hearsay, he has abandoned the issue on appeal.  *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006) (holding that a defendant abandoned his hearsay challenges on appeal because he failed to clarify what objectionable statements, if any, were made on video recordings and failed to explain how the allegedly inadmissible testimony prejudiced him).  In his brief on appeal, defendant broadly objects to the admission of the audio recordings containing statements by Briggs and Moses without identifying a single statement made by either declarant that he claims to be hearsay.  Accordingly, defendant has failed to adequately brief this issue and has abandoned the issue on appeal relative to statements made by Briggs and Moses.  See *id*.

With respect to the second CI's recorded statements, defendant has challenged only one with any specificity: a statement made by the CI during the October 6, 2015 controlled purchase regarding defendant's refusal to sell to him after prior negotiations fell through.[1]  Thus, we examine whether this statement amounts to inadmissible testimonial hearsay and whether its admission constitutes plain error affecting defendant's substantial rights.

Both the United States and Michigan constitutions entitle criminal defendants to the right " 'to be confronted with the witnesses against him . . . .' "  *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012), quoting US Const Am VI and Const 1963, art 1, § 20.  One protection afforded by the Confrontation Clause includes the inadmissibility of hearsay evidence that is "testimonial" in nature, unless the declarant appears at trial or the defendant had a previous

---

[1] Contrary to defendant's assertions in his brief on appeal, the second CI's statement did not convey an offer to trade defendant tramadol for morphine.  Rather, speaking to Andrews and Briggs, the second CI explained that he had previously discussed a trade with defendant but stated, "I don't know what we should do, like, at this point because he won't sell me any [morphine] because he wants the tram[adol]s from me . . . ."

opportunity to cross-examine the declarant. *Id*., citing *Crawford v Washington*, 541 US 36, 51, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The United States Supreme Court has defined "testimony" in the following manner:

> "Testimony," in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.
>
> * * *
>
> Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. [*Crawford*, 541 US at 51, 68 (quotation marks and citations omitted).]

Testimony that is not offered to prove the truth of the matter asserted does not present a hearsay or Confrontation Clause violation. *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). In particular, statements offering background information explaining how certain events unfolded or why certain individuals acted as they did are admissible. *Id*.; see also *United States v Cromer*, 389 F3d 662, 676 (CA 6, 2004).

Here, the CI's statement regarding his prior negotiations with defendant does not offend the Confrontation Clause because it was offered to establish background context surrounding the controlled purchase. Specifically, the statement establishes why Andrews and the second CI were unable to directly transact with defendant and, consequently, why it was necessary to use Briggs as an intermediary. Andrews' trial testimony that she used intermediaries because defendant refused to deal directly with her further bolstered the second CI's statement. The second CI's statement was not offered, as defendant suggests, to prove that a drug transaction occurred. In fact, the CI never stated that he successfully purchased or traded drugs with defendant, only that the two had discussed it. Because the second CI's statement was used to establish background context explaining why he and Andrews acted as they did, we conclude it does not constitute hearsay and therefore does not implicate the Confrontation Clause.

Further, as the CI's statement was made not to government officials but rather to two alleged co-conspirators, it is unclear whether this statement qualifies as testimony. As the prosecution observes, the United States Supreme Court, the Michigan Supreme Court, and this Court have yet to resolve whether recorded statements made by a CI to a co-conspirator are testimonial. See, e.g., *Ohio v Clark*, __ US __ ; 135 S Ct 2173, 2182; 192 L Ed 2d 306 (2015) (declining "to adopt a rule that statements to individuals who are not law enforcement officers are categorically outside the Sixth Amendment" while acknowledging that such statements "are significantly less likely to be testimonial than statements given to law enforcement officers"). However, as we conclude that the statements presently at issue are not hearsay, we need not resolve the issue of whether they are testimonial. Accordingly, the trial court did not abuse its discretion when it admitted the second CI's recorded statement.

Even if defendant was deprived of his right of confrontation, the admission of the second CI's recorded statement would constitute harmless error. A violation of the Confrontation Clause may be considered harmless error "if the minds of an average jury would [not] have found the prosecution's case significantly less persuasive" absent the improper statements. *People v Spinks*, 206 Mich App 488, 493; 522 NW2d 875 (1994) (quotation marks omitted). That is, the reviewing court must be satisfied that it is "clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). Statements that violate a defendant's right to confront their accusers amount to harmless error when the remaining evidence against the defendant is overwhelming. *People v Banks*, 438 Mich 408, 427; 475 NW2d 769 (1991).

In the present case, the remaining evidence overwhelmingly supports the jury's verdict. Not only did Andrews', Briggs', and Moses' testimony demonstrate that defendant sold morphine to Briggs on October 6, 2015, and to Moses on October 9, 2015, but their testimony was also corroborated by that of the surveilling officers. Defendant attempts to undermine the credibility of the remaining evidence by arguing that Andrews, Briggs, and Moses are drug addicts who were incentivized to testify in exchange for leniency with respect to their own sentences. However, defendant's argument is unavailing, as credibility determinations are reserved for the jury and will not be disturbed by this Court. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) ("[W]e will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses."). In the face of such compelling evidence, we are persuaded that the jury's verdict would have remained unchanged. Thus, had the second CI's recorded statement amounted to inadmissible hearsay, its admission was harmless beyond a reasonable doubt.

## B. PRIOR OR CONTEMPORANEOUS ACTS

Next, defendant contends that the trial court erred when it admitted testimony by Andrews and Moses describing previous drug transactions with defendant. Additionally, defendant challenges the trial court's admission of testimony from Briggs concerning the October 9, 2015 transaction involving the second CI. Defendant argues that each witness's testimony was irrelevant and unfairly prejudicial. Although we agree that Moses's statements were inadmissible under MRE 404(b)(1), we hold that the resulting error was ultimately harmless, and therefore does not warrant reversal. Moreover, we hold that Andrews' and Briggs' testimony was properly admitted.

When an evidentiary issue is preserved, this Court reviews a trial court's decision to admit evidence for an abuse of discretion but reviews preliminary questions of law, such as whether a rule of evidence precludes admissibility, de novo. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). When an evidentiary issue is unpreserved, it is reviewed for plain error affecting substantial rights. *Id*. As a preliminary matter, defendant objected to Andrews' and Moses' testimony only on the basis of relevance but not prejudice. Accordingly, defendant's arguments regarding prejudice are unpreserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). Likewise, defendant's arguments concerning

Briggs' testimony are unpreserved, as defendant failed to make objections during trial. See *id.* We thus review these matters for plain error affecting defendant's substantial rights.

In accordance with MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, Rule 404(b)(1) also provides that evidence of prior acts may be admitted for other "noncharacter" purposes, including

> proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Our Supreme Court has held that this list is nonexhaustive and that the rule generally "permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct." *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). In evaluating whether evidence of prior acts avoids such impermissible inferences, courts apply a four-prong standard:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id.*, quoting *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

The prosecution contends that Andrews' and Moses' testimony was relevant to and offered for the proper purpose of rebutting defendant's attack on their credibility.[2] Our Supreme Court has held that a witness's testimony concerning prior acts was admissible when it was offered for the purpose of rebutting a defendant's claim that the allegations underlying the charges had been fabricated. *Id.* at 501. In *Starr*, the defendant denied charges of criminal sexual conduct, claiming that the allegations were fabricated by the victim's mother two years after they had allegedly occurred. *Id.* However, the trial court permitted the prosecution to introduce testimony from defendant's half-sister, who stated that defendant sexually abused her and that sharing this information with the victim's mother prompted the victim ultimately to reveal the abuse at issue. *Id.* at 501-502. Our Supreme Court determined that the evidence was necessary for the prosecution to effectively refute the defendant's claims of fabrication, as

---

[2] Defendant makes passing reference in his brief on appeal that the prosecution did not file a pretrial motion seeking admission of the prior acts evidence as required by MRE 404(b)(2). However, because defendant does not elaborate on how his defense would have differed had the prosecution given notice, it is impossible for this Court to determine the actual impact the lack of notice may have had. See *People v Hawkins*, 245 Mich App 439, 455-456; 628 NW2d 105 (2001). Thus, reversal on this ground is not warranted. See *id.*

"[w]ithout such evidence, the fact finder would be left with a chronological and conceptual void regarding the events . . . ." *Id*. at 502-503 (quotation marks and citations omitted).[3]

In the present case, defendant similarly maintained his innocence while primarily attacking the credibility of Andrews, Briggs, and Moses. Specifically, defendant emphasized that the three witnesses were drug addicts who were incentivized to cooperate with the prosecution in the hopes of obtaining leniency with respect to their own sentences. Defendant argued that the prosecution presented no evidence apart from this testimony directly linking him to the transactions, given that Andrews purchased the morphine from Briggs and Moses. Thus, defendant maintained that the witnesses fabricated their allegations against him and that the drugs were supplied from another source.

In response to defendant's challenge to the lack of evidence directly linking him to the controlled purchases, Andrews referenced her previous drug transactions with defendant in order to explain why she used Briggs and Moses as intermediaries as opposed to purchasing drugs directly from defendant:

> *Q*. Was Mr. Paulitch somebody that you knew you could get drugs from?
>
> *A*. Yes.
>
> *Q*. Okay. Had you bought from him before?
>
> *A*. Yes.
>
> *Q*. You directly or through somebody else?
>
> *A*. Directly.
>
> *Q*. Okay. And what did you buy from him?
>
> *A*. Purple morphine thirties.
>
>              \* \* \*
>
> *Q*. Okay. All right. Now, why did you have to give the money to Gina [Briggs] to have her go into Mr. Paulitch's house?
>
> *A*. The other CI that was with me is prescribed tramadols.
>
> *Q*. Okay.

---

[3] This analysis has been applied not only in the context of criminal sexual conduct but also in a case involving premeditated first-degree murder and felony firearm. See *People v Johnigan*, 265 Mich App 463, 466-467; 696 NW2d 724 (2005).

*A*. And he wanted to do a trade, and he wouldn't do the trade, so he wouldn't sell to us.

*       *       *

*Q*. If, if you hadn't had somebody who wouldn't trade, you know, tramadols for morphine or whatever, if it had just been normally just you by yourself would Mr. Paulitch always sell to you?

*A*. Not always. After I got in trouble the last time, it was like a little while before he would deal with me again.

Andrews could not have adequately explained the necessity of using intermediaries unless she referenced the previous deal with defendant that resulted in her "getting in trouble." Without this testimony, the jury would have been left with a conceptual void as to why Briggs and Moses were involved in the controlled purchase and why Andrews was not dealing directly with defendant. Left unaddressed, this void could have cast doubt on Andrews' testimony as well as on defendant's connection to the transaction. Accordingly, this testimony was necessary to rebut defendant's claims of fabrication and that the drugs were supplied from another source.

Moreover, the probative nature of this testimony is not substantially outweighed by the risk of unfair prejudice. Undoubtedly, evidence that a criminal defendant has previously committed the same offense for which he currently stands trial raises a significant risk that jurors will improperly conclude that "the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.' " *Crawford*, 458 Mich at 398, quoting *United States v Johnson*, 27 F3d 1186, 1193 (CA 6, 1994). However, reference to Andrews' previous dealings with defendant was necessary to effectively explain the role of the intermediaries. Andrews did not offer inflammatory testimony, nor did she testify in detail regarding the number of previous transactions she made with defendant, the amount or price of drugs she purchased, or her awareness of others with whom defendant transacted. Rather, the prosecution narrowly confined Andrews' testimony to those matters necessary to rebut defendant's attack on her credibility. Thus, we conclude that the trial court did not err by admitting Andrews' testimony.

Next, we turn to Moses' testimony that she had been purchasing morphine from defendant "for a few years." Arguably, Moses' testimony regarding her history with defendant lends credence to her assertion that defendant supplied the morphine she subsequently sold to Andrews. However, unlike the testimony at issue in *Starr*, Moses' testimony was not necessary to effectively rebut defendant's argument that her account regarding the October 9, 2015 transaction was fabricated. Rather, both Andrews and TRIDENT Agent Todd Gallagher corroborated Moses' allegation that she purchased the morphine from defendant, as each testified that they positively identified defendant during the transaction. Accordingly, Moses' testimony regarding her previous transactions with defendant was unduly prejudicial and was not admitted for the proper purpose of rebutting defendant's attack on her credibility. Therefore, this testimony constitutes error in violation of MRE 404(b).

Although admission of Moses' testimony amounts to error, it was nonetheless harmless, as defendant has not demonstrated that it affected the outcome of trial such that reversal is

warranted. See *Walker*, 273 Mich App at 66. Indeed, the unchallenged and admissible evidence against defendant overwhelmingly favored conviction. See *People v Jackson*, 498 Mich 246, 280; 869 NW2d 253 (2015) (holding that overwhelming admissible evidence of a defendant's guilt was sufficient to render a violation of Rule 404(b) harmless). As discussed above, defendant failed to rebut Andrews', Briggs', and Moses' admissible, unchallenged testimony establishing his involvement in the October 6 and October 9, 2015 controlled purchases. Defendant also failed to rebut the testimony of the surveilling officers, who corroborated the events as detailed by these three witnesses, or the physical evidence produced at trial (i.e., the morphine tablets). Because the overwhelming weight of admissible evidence supported the jury's verdict, we conclude that Moses' improperly admitted testimony was not outcome determinative, and reversal is not warranted. See *People v Denson*, 500 Mich 385, 409; 902 NW2d 306 (2017).

Finally, we turn to defendant's objection to Briggs' testimony. Briggs testified that on October 9, 2015, she facilitated a transaction between the second CI and defendant for the purchase of morphine. Although defendant was not charged for delivery under MCL 333.7401(2)(a) for this transaction, the parties agree that it served as the basis for one of the two conspiracy charges. Because the prosecution voluntarily dismissed both conspiracy charges at the close of its proofs, defendant maintains that Briggs' testimony with respect to this transaction was irrelevant and unduly prejudicial. However, Briggs testified before the conspiracy charges were voluntarily dismissed. Contrary to defendant's suggestions, there is no indication of bad faith on the part of the prosecution. Nothing in the record supports an inference that either the prosecution or the trial court knew, at the time of Briggs' testimony, that the conspiracy charges would be dismissed. Accordingly, at the time it was delivered, Briggs' testimony did not run afoul of MRE 404(b), as it formed the basis of one of the charges at issue in the case and did not constitute "another" crime, wrong, or act. Additionally, the testimony was relevant under MRE 401 with respect to the existence of a conspiracy between defendant and Briggs, as it tended to demonstrate a pattern whereby Briggs served as a contact or intermediary for those seeking to purchase drugs from defendant. See MCL 750.157a.

Further, defendant made no objection to Briggs' testimony at the time it was delivered, nor did he request that the jury be given a limiting instruction after the prosecution dismissed the conspiracy charges. "Counsel may not harbor error as an appellate parachute," *People v Riley*, 465 Mich 442, 448; 636 NW2d 514 (2001) (quotation marks and citations omitted), by failing to object or request a limiting instruction but thereafter seek to set aside his conviction in favor of a new trial. We thus conclude that the trial court did not err in admitting Briggs' testimony.

## C. PROSECUTORIAL DISQUALIFICATION

Defendant next argues that the trial court erred by failing to disqualify the prosecutor because of his previous representation of defendant in a 2012 criminal case resulting in defendant's convictions for delivery of narcotics and maintaining a drug house. We disagree.

This Court reviews a trial court's findings of fact regarding a motion for disqualification of counsel for clear error. *People v Tesen*, 276 Mich App 134, 141; 739 NW2d 689 (2007). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Thompson (On Remand)*, 314 Mich App 703, 720; 887

NW2d 650 (2016) (quotation marks omitted). The application of the relevant law to the facts is reviewed de novo. *Tesen*, 276 Mich App at 141. "[T]he application of 'ethical norms' to a decision whether to disqualify counsel is also reviewed de novo." *Id.*

Under MRPC 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." There is no dispute that the prosecutor's interests are materially adverse to those of defendant in the present matter. Further, the prosecution concedes that, in accordance with the presumption established by Michigan case law, the trial prosecutor received confidential information in the course of his previous representation of defendant. See *In re Osborne Minor*, 237 Mich App 597, 609; 603 NW2d 824 (1999). However, the prosecution maintains that the present case is not "substantially related" to the 2012 charges.

This Court has employed a three-pronged test to determine whether an attorney's adverse subsequent representation is substantially related to the previous representation of a former client. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 605; 792 NW2d 344 (2010). A court must ascertain (1) the nature and scope of the prior representation; (2) the nature of the present lawsuit against the former client; and (3) in the course of the prior representation, whether the client might have disclosed to his attorney confidences which could be relevant to the present action and could be detrimental to the former client. *Id.* With respect to its evaluation of the third element, courts are cautioned against "allow[ing] [their] imagination[s] to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Id.* at 606 (quotation marks and citations omitted). Additionally, a court may conclude that a subsequent case is substantially related to a previous matter if "the factual contexts of the two representations are similar or related." *People v Waterstone*, 287 Mich App 368, 385; 789 NW2d 669 (2010), rev'd on other grounds 486 Mich 942 (2010).

Although little detail is provided regarding the scope and nature of the prosecutor's previous representation of defendant, that matter concerned criminal charges resulting in defendant's 2012 convictions for delivery of narcotics and maintaining a drug house. The charges at issue in both the previous and present cases are identical; however, the factual bases underlying them are unrelated. The present charges stem from discrete transactions that occurred on October 6 and October 9, 2015. The factual circumstances underlying defendant's 2012 convictions stem from conduct that occurred in 2011, four years before the offenses currently at issue. The mere fact that the previous charges served as a basis for defendant's status as a third-degree habitual offender is immaterial, as defendant's criminal history is a matter of public record. Accordingly, it cannot be said that the two cases are substantially related. See *id.*; *Alpha Capital Mgt, Inc*, 287 Mich App at 605-606.

Defendant contends that he need not prove actual bad faith on the part of the prosecution, as the mere "appearance of impropriety" is sufficient to justify disqualification. See *People v Doyle*, 159 Mich App 632, 642-644; 406 NW2d 893 (1987). As noted in *Doyle*, the "appearance of impropriety" standard was set forth by Canon 9 of the former Michigan Code of Professional Responsibility. *Id.* at 642. However, this standard is no longer applicable, as discussed by the comment to MRPC 1.9:

Two problems can arise under this rubric. First, the appearance of impropriety might be understood to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" begs the question. Thus, the problem of imputed disqualification cannot readily be resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.

A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.

Defendant's reliance on this standard is therefore misplaced, and we conclude that the trial court did not err in declining to disqualify the prosecutor.

## D. CORRECTION OF JUDGMENT OF SENTENCE

Lastly, defendant asserts that his sentence for the conviction of one count of delivery of a controlled substance in lower court docket number 2016-003708-FH incorrectly indicates that he was sentenced to a minimum term of 39 months' imprisonment. We agree, as does the prosecution. The record reflects that trial court sentenced defendant to a minimum term of 30 months' imprisonment for this offense. Remand for the ministerial task of correcting the judgment of sentence is appropriate when the judgment does not accurately reflect the sentence imposed by the trial court. See *People v Shipley*, 256 Mich App 367, 379; 662 NW2d 856 (2003); *People v Katt*, 248 Mich App 282, 312; 639 NW2d 815 (2001). We remand for correction of the judgment of sentence.

Affirmed, but lower court docket number 2016-003708-FH is remanded for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Michael F. Gadola